**DAVIS WRIGHT TREMAINE LLP**
Geoffrey S. Brounell
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:  (212) 489-8230
geoffreybrounell@dwt.com

*Attorneys for The GEO Group, Inc.,*
*incorrectly sued as GEO Re-Entry Group, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF NEWARK,<br><br>                             Plaintiff,<br><br>            - against -<br><br>GEO RE-ENTRY GROUP, LLC;<br>ABC CORPS. (A FICTIOUS<br>COMPANY) 1-100,<br><br>                             Defendants. | Case No. 2:25-cv-02225<br><br>**NOTICE OF REMOVAL** |

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442 and 1446, Defendant The

GEO Group, Inc., incorrectly sued as GEO Re-Entry Group, LLC ("GEO" or

"Defendant"),[1] hereby removes the above-captioned action from the Superior Court

of New Jersey, Law Division, Essex County, bearing Docket No. ESX-L-002510-

---

[1] The contract for the operation of the Delaney Hall Facility is between U.S.
Immigration and Customs Enforcement and The GEO Group, Inc.  The GEO Group,
Inc. family of companies does not include any entity known as "GEO Re-Entry
Group, LLC."

1

25 to the United States District Court for the District of New Jersey. The action is removable pursuant to 28 U.S.C. §§ 1331 and 1442(a)(1) in that it is a civil action in which the alleged right to relief necessarily depends on the resolution of a substantial question of federal law. This action is also removable pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. GEO respectfully submits the following grounds for removal:

## I.    **LOCAL CIVIL RULE 10.1(a) INFORMATION**

1.    Pursuant to Rule 10.1(a) of the Local Civil Rules, the addresses of the named parties are as follows:

2.    Upon information and belief, Plaintiff The City of Newark is a municipality organized pursuant to Title 40 of the New Jersey Statutes, with municipal offices located at 920 Broad Street, Newark, New Jersey. The City of Newark is represented by Michael A. Armstrong & Associates, LLC, 79 Mainbridge Lane, Willingboro, New Jersey, 08046.

3.    Defendant GEO's principal place of business is located at 4955 Technology Way, Boca Raton, Florida 33431. GEO is represented by Geoffrey Brounell, Davis Wright Tremaine LLP, 1251 Avenue of the Americas, 21st Floor, New York, NY 10020.

## II.    __INTRODUCTION__

4.      GEO, by and through its undersigned attorneys hereby removes this action from the State of New Jersey, Essex County Superior Court, Law Division, bearing Docket No. ESX-L-002510-25, to the United States District Court of New Jersey.  Plaintiff, the City of Newark ("Plaintiff" or "Newark"), seeks orders, *inter alia*, granting Newark entry to a federal immigration facility located at 451 Doremus Avenue in Newark, New Jersey (the "Delaney Hall Facility" or "Facility"), and ordering that no occupancy be permitted pending inspection and compliance with local, State, and administrative codes.

5.      GEO owns Delaney Hall Facility, which is located at 451 Doremus Avenue in Newark, New Jersey and has a permitted use capacity of approximately 1,196 beds.  At various times since its opening in 2000, the Delaney Hall Facility has held federal, state, and county detainees.  From 2011 through 2017, U.S. Immigration and Customs Enforcement ("ICE") previously contracted to house up to 450 immigration detainees at the Delaney Hall Facility, including detainees from Texas, Louisiana, and other locations throughout the United States.

6.      In April 2024, GEO filed an action in this Court for declaratory and injunctive relief against Governor Philip D. Murphy and Attorney General Matthew J. Platkin concerning New Jersey Assembly Bill 5207 ("AB 5207"), L.2021, c. 199, §§ 1-2, codified at N.J. Stat. Ann. §§ 30:4-8.15 to 8.16.  AB-5207 purports to prohibit

3

ICE from entering into contracts with private service contractors—like GEO—for the detention of individuals by the federal government in the State of New Jersey. Case 3:24-cv-04990-RK-TJB.

7.　　On April 25, 2024, the Honorable Robert Kirsch entered an order preliminarily enjoining the State of New Jersey from enforcing N.J. Stat. Ann. § 30:4-8.16(b)(2) against a private detention facility—including any owned by Plaintiff GEO—until a further Order of this Court. A true and correct copy of this Court's Order is attached as **Exhibit A**.

8.　　In February 2025, ICE announced the imminent reopening of the Delaney Hall Facility and on February 27, 2025, GEO announced that it had been awarded a 15-year, fixed-price contract by ICE to provide support services for the establishment of a federal immigration processing center at the company-owned, 1,000-bed Delaney Hall Facility in Newark, New Jersey. A true and correct copy of ICE's February 26, 2025, press release is attached as **Exhibit B**, and a true and correct copy of GEO's February 27, 2025, press release is attached at **Exhibit C**.

9.　　Since the time of this announcement, federal, state and local New Jersey elected officials have vowed to "fight like hell" and "fight to the death" against federal immigration enforcement in New Jersey. *ICE Detention Center In NJ Is First To Open Under Trump's New Term*, February 27, 2025, https://patch.com/new-jersey/newarknj/ice-detention-center-nj-first-open-under-trumps-new-term.

10.     U.S. Rep. LaMonica McIver, who represents Newark and other 10th District municipalities in the House of Representatives, decried the announcement from ICE:

> The Delaney Hall contract is in direct opposition to the will of the people here in Newark," she said. "I denounced the potential opening of this facility earlier this month alongside my colleagues from New Jersey because privately owned detention centers degrade public trust in our institutions—the lack of transparency often leads to poor conditions and longer sentences.

*Id.*

11.     Similarly, Newark Mayor Ras Baraka, a Democrat running for governor, has vowed to block federal immigration detention at Delaney Hall:

> ***Regardless of the process, an immigrant detention center is not welcomed here.*** ICE's stated intention to round up 'criminals' is a thin veil that does not conceal their scheme to violate people's rights, desecrate the Constitution, and disassemble our democracy.

*Mayor Ras J. Statement on Ice Intention to Open Detention Center at Newark's Delaney Hall*, February 27, 2025, https://www.newarknj.gov/news/mayor-ras-j-statement-on-ice-intention-to-open-detention-center-at-newarks-delaney-hall. (emphasis added).

12.     On March 11, 2025, Mayor Baraka appeared outside Delaney Hall with about 300 immigrants' rights advocates and other opponents of the facility demonstrating in its parking lot. Mayor Baraka vowed to "padlock the building if necessary" to block operation:

> Newark Mayor Ras J. Baraka said Tuesday that the private owner of an immigrant detention center lacks city planning board approval and a certificate of occupancy to open, and that his administration will file a lawsuit and padlock the building if necessary to block its opening without the necessary approvals.

Steve Strunsky, '*We are all immigrants': Newark rallies against massive new ICE detention center*, NJ.com, March 11, 2025, https://www.nj.com/essex/2025/03/newark-mayor-leads-detention-center-protest-says-it-needs-local-approval.html.

13.     At 9:22 a.m. on March 31, 2025, Mayor Baraka accompanied by employees of the Newark Building, Fire, and Engineering departments demanded access to the federally-contracted Delaney Hall Facility.  ICE Headquarters instructed that the City of Newark Officials would not be permitted access and needed to schedule an appointment to enter the facility.  GEO advised the City of Newark Officials of this instruction.

14.     Removal is accordingly proper pursuant to 28 U.S.C.A. §§ 1331, 1332, 1441, 1442 and 1446.  In support of this Notice of Removal, Defendant states the following:

## III.   NATURE OF THE CLAIMS

15.     Plaintiff initiated a claim for a civil action in the State of New Jersey, Essex County Superior Court, Law Division, by filing a Complaint in Support of Order to Show Cause.  A copy of the Complaint and all other pleadings, processes,

and orders served upon GEO and available on the state court docket are attached as **Exhibit D**.

16.    Plaintiff's Complaint describes the action as seeking an order, inter alia, granting Newark entry to the Delaney Hall Facility, and ordering that no occupancy be permitted at the federal facility pending inspection and compliance with local, State, and administrative codes.

17.    The Delaney Hall Facility is a secure federal immigration detention facility. GEO has been contracted to provide secure residential care support at the facility pursuant to a federal contract with ICE.

18.    Consistent with the requirements of GEO's contract for secure residential services at the Delaney Hall Facility, ICE exercises exclusive control over all access to secure portions of the facility.

19.    All requests for access to secure portions of the Delaney Hall Facility must obtain pre-clearance approvals by ICE, including all requests for access by federal and state employees, as well as GEO employees.  GEO is without authority to grant access to the secure portions of the Delaney Hall Facility absent ICE clearance and approval.

20.    On March 31, 2025, Newark representatives at the Delaney Hall Facility and requested access to the facility to conduct inspections.  GEO communicated Newark's demand to ICE.  ICE Headquarters instructed that the City

of Newark Officials would not be permitted access and needed to schedule an appointment to enter the facility. GEO advised the City of Newark Officials of this instruction.

21.     This Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable. 28 U.S.C. § 1446(b). GEO obtained a copy of the Complaint on April 1, 2025. The receipt of the Complaint put GEO on notice for the first time that Plaintiff's claims in this action involve ICE's denial of Newark's request for access to the Delaney Hall Facility. The removal of the action, which is being filed within 30 days of GEO's receipt of the Complaint, is therefore timely under 28 U.S.C. § 1446(b).

## IV.  **JURISDICTION AND INTRADISTRICT ASSIGNMENT**

22.     Subject matter jurisdiction is based on 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446, as set forth below under Sections V and VI.

23.     Venue is proper in the United States District Court for New Jersey, as the state court action, which is the subject of this removal petition, was filed in the Superior Court of New Jersey, Law Division, Essex County, where it is now pending.

## V.    <u>GROUNDS FOR REMOVAL – FEDERAL QUESTION</u>

24.    This is a civil action over which this Court also has original jurisdiction under 28 U.S.C. § 1331 and is removable to this Court by GEO pursuant to the provisions of 28 U.S.C. § 1442(a)(1) in that it is a civil action in which Plaintiff's alleged right to relief necessarily depends on the resolution of a substantial question of federal law. "Federal officers, and their agents, may remove cases based on acts performed under the color of their federal office if they assert a colorable defense." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); *see also Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-1181 (7th Cir. 2012).

25.    Title 28 U.S.C. § 1442(a)(1) "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 869 (E.D. Mo. 2016). The words "or relating to" were added to the statute by Congress in 2011. This addition was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." *Id.* (citation omitted).

26.    The Supreme Court has mandated a generous interpretation of the federal officer removal statute in favor of removal. *Ruppel*, 701 F.3d 1176 at 1180 (the federal officer removal status is not narrow or limited); *Willingham v. Morgan*, 395 U.S. 402, 406-407 (1969); *see also Jefferson County, Alabama v. Acker*, 527

U.S. 423, 431 (1999) (noting that the Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal officer removal] statute.").

27.    At all relevant times, GEO was a "person(s)" within the meaning of 28 U.S.C. § 1442(a)(1). *Ruppel*, 701 F.3d at 1181 (finding that a corporate defendant was a "person"); *see also Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992).

28.    Plaintiff's claim against GEO is based solely on GEO's performance of its federal contract with ICE to provide secure residential services at the Delaney Hall Facility.  GEO was acting under direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1) when it communicated with Newark on March 31, 2025 and conveyed Newark's request for access to the Delaney Hall Facility.

29.    Because ICE, not GEO, denied Newark access to the Delaney Hall Facility, GEO has colorable federal defenses to Plaintiff's claims.

30.    Because GEO's interaction with Newark on March 31, 2025, was in accordance with Congressionally mandated detention standards, its federal contractual requirements, and under the explicit direction of an officer of the United States, GEO has colorable federal defenses to Plaintiff's claims.

31.    Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (a) demonstrate that it acted under the direction of a federal officer,

(b) raise a colorable federal defense to plaintiff's claims, and (c) demonstrate a causal nexus between plaintiff's claims and the acts it performed under color of federal office. *See Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Ruppel*, 701 F.3d at 1180-1181.

32.    "Requiring a private contractor seeking federal officer removal to show a 'colorable' claim of state law preemption violates the fundamental principle that '[t]he officer need not win his case before he can have it removed.'" *Graves v. 3M Co.*, 17 F.4th 764, 773 (8th Cir. 2021) (quoting *Willingham*, 395 U.S. at 407, 89 S.Ct. 1813).

33.    "While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated.  Nor is the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit the source of the defense." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010).  "It is the sufficiency of the facts stated — not the weight of the proof presented — that matters.  For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.  Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the

light most favorable to the defendant, would establish a complete defense at trial." *Id.* at 782-83.

34.    Should Plaintiff file a motion to remand this case, GEO respectfully requests an opportunity to respond more fully in writing, including the submission of further affidavits and authorities, but offers the following at this time:

1.    The Delaney Hall Facility is a secure federal immigration detention facility.  GEO has contracted with ICE to provide secure residential care support at the Delaney Hall Facility.  *See* Tatum Affidavit ¶¶ 3-4.

2.    Consistent with the requirements of GEO's contract for secure residential services at the Delaney Hall Facility, ICE exercises exclusive control over all access to secure portions of the facility.  *See* Tatum Aff. ¶ 4.

3.    All requests for access to the secure portions of the NWIPC must obtain pre-clearance approvals by ICE, including all requests for access by federal and state employees, as well as GEO employees.  *See* Scott. Aff. ¶ 10.

4.    On March 31, 2025, Newark representatives requested entry to the Delaney Hall Facility to conduct inspections. GEO communicated Newark's demand to ICE.  ICE Headquarters instructed that the City of Newark Officials would not be permitted access and needed to schedule an appointment to enter the facility.  GEO advised the City of Newark Officials of this instruction.  *See* Tatum Aff. ¶¶ 5-9.

35.    GEO raises colorable federal defenses to this action under the doctrine of "derivative sovereign immunity," under the "intergovernmental immunity doctrine," and under principles of federal preemption.

### A.    Derivative Sovereign Immunity

36.    "The United States may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  It is therefore immune from suit unless a plaintiff can point to a statute that says otherwise.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672, 193 L. Ed. 2d 571 (2016); *Mitchell*, 463 U.S. at 212 ("[T]he existence of consent is a prerequisite for jurisdiction.").  Similarly, government contractors may not be sued for carrying out the sovereign's will.  *Yearsley v. W.A. Ross Construction Company*, 309 U.S. 18, 20 (1940); *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341–43 (4th Cir. 2014) (private employees receive Yearsley immunity (a/k/a derivative sovereign immunity or "DSI") when performing same functions as government employees); *see generally Filarsky v. Delia*, 566 U.S. 377 (2012) ("[I]t should come as no surprise that the common law did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities.").  That is because the government has an "unquestioned need to delegate [its] functions," and because "[i]mposing liability on private agents of the government would directly

impede the significant governmental interest in the completion of its work." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).

37.    Thus, "a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d at 646 (citing *In re KBR*, 744 F.3d at 342; *Yearsley*, 309 U.S. at 20-21). In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), the U.S. Supreme Court affirmed the two prong *Yearsley* standard, and explained the standard as follows: "Where the Government's 'authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress,' we explained, 'there is no liability on the part of the contractor' who simply performed as the Government directed." *Campbell-Ewald*, 136 S. Ct. at 673 (quoting *Yearsley*, 309 U.S. at 20-21).

38.    As a result, GEO is immune from any suit for carrying out the sovereign's will and conveying Newark's request for access to the Delaney Hall Facility to ICE. GEO is also immune from suit for ICE's decision to deny Newark's request for access to the Delaney Hall Facility and for communicating ICE's instructions to Newark. *Yearsley*, 309 U.S. at 20; *In re KBR, Inc.*, 744 F.3d at 341–43.

## B.    Intergovernmental Immunity—Direct Regulation

39.    The Supremacy Clause provides that the "Laws of the United States" made in pursuance of the Constitution "shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2.    More than 200 years ago, in the foundational case of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), the Supreme Court recognized that this guarantee of federal supremacy would be meaningless if the federal government were not immune from regulation and taxation by the states. The Supreme Court held that the supremacy of the federal government within its legitimate sphere of action necessarily meant that the states had no power to interfere with a constitutionally valid federal activity.  *Id.* at 427-30.  In line with *McCulloch*'s prohibition on state laws that "retard, impede, burden, or in any manner control, the operations" of the federal government, 17 U.S. (4 Wheat.) at 436, a state law directly regulates the federal government—and is therefore unconstitutional—if it "involve[s] a direct, physical interference with federal activities . . . or some direct, immediate burden on the performance of the [federal] functions."  *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 96 (1945).  In assessing whether a state law substantially burdens federal operations, there is no distinction between state regulation of federal employees and state regulation of private contractors carrying out federal operations. In *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824), the Supreme Court declared that "the right of the State to control [a federal contractor's]

operations, if those operations be necessary to its character, as a machine employed by the government, cannot be maintained." *Id*. at 867 (Marshall, C.J.).

40.    The Supreme Court has consistently relied on the Supremacy Clause to strike down state laws that dictate how the federal government carries out its federal functions.   In *Johnson v. Maryland*, Maryland sought to require a federal postal employee to comply with a state licensing regime before he could perform his federal duties.   254 U.S. 51, 55, 41 S.Ct. 16, 65 L.Ed. 126 (1920). In holding the state law unconstitutional, the Court observed:

> [T]he immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on.

*Id.* at 57, 41 S.Ct. 16.

41.    In *Leslie Miller, Inc. v. Arkansas*, the Supreme Court struck down an Arkansas law that prevented a contractor selected by the federal government from bidding, contracting, and commencing work on a military base "without having obtained a license under Arkansas law for such activity ...."   352 U.S. 187, 188, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956). The Court, in rejecting the state law, reasoned that "[s]ubjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review" over the federal government's determination of who was qualified to perform federal work.  *Id.* at

190, 77 S.Ct. 257.  Through the discriminatory application of the Newark municipal code, Newark likewise attempts to override ICE's contract award decision and the selection of the Delaney Hall Facility.

42.    Following this precedent, courts have held that intergovernmental immunity forbids a state from substantially interfering with federal activity carried out by a private contractor, even where the activity occurs on private land.  *Boeing Co. v. Movassaghi*, 768 F.3d 832, 839 (9th Cir. 2014).  Plaintiff's attempt to enter the Delaney Hall Facility and inspect, investigate, and enforce local, State, and administrative requirements at the Delaney Hall Facility is unconstitutional because it attempts to directly regulate, control, and interfere with federal activities in violation of the Intergovernmental Immunity Doctrine.  *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467 (2023).

## C.    Intergovernmental Immunity—Impermissible Discrimination

43.    The United States Supreme Court recently confirmed that the doctrine of Intergovernmental Immunity prohibits state laws that either "regulat[e] the United States directly or discriminat[e] against the Federal Government or those with whom it deals."  *United States v. Washington*, 142 S.Ct. 1976, 1984 (2022) (emphasis in original) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). A state law impermissibly discriminates against the federal government or its contractors if it "single[s them] out" for less favorable "treatment," *Washington*

*v. United States*, 460 U.S. 536, 546 (1983), or if it regulates them unfavorably on some basis related to their governmental "status," *North Dakota*, 495 U.S. at 438 (plurality opinion).  Preventing discrimination against the federal government or those with whom it deals lies at the heart of the Constitution's intergovernmental immunity doctrine. *United States v. Washington*, 142 S.Ct. at 1985.

44.    It is beyond cavil, that Newark's current attempts to block federal immigration operations at the Delaney Hall Facility represent a stark and unmistakable attempt to thwart federal operations through the less favorable treatment of ICE and its contractor GEO under local, State, and administrative requirements.  This type of blatant discrimination is plainly unconstitutional. *United States v. California*, 921 F.3d 865, 883-84 (9th Cir. 2019) *see also GEO Group, Inc. v. Newsom*, 50 F.4th 745, 760 (9th Cir. 2022) ("[e]nforcement of the substance of [the regulation] against the contractors would have the same effect as direct enforcement against the Government.").  Plaintiff's attempt to enter the Delaney Hall Facility ostensibly to investigate compliance with local, State, and administrative codes is unconstitutional and invalid because it impermissibly discriminates against the federal government and its contractors.  *United States v. Washington*, 142 S.Ct. at 1982.

### D.    Federal Preemption—Field

45.    Federal immigration law provides that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," and "[w]hen United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the [Secretary] may expend . . . amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention." 8 U.S.C. § 1231(g)(1). To effectively arrange for appropriate places of detention for removal aliens, Congress further granted the Secretary authority "to make contracts . . . as may be necessary and proper to carry out [his] responsibilities," 6 U.S.C. § 112(b)(2), including contracts with private parties. Congress further authorized the Secretary, in his "reasonable discretion," to carry out the immigration enforcement activities of the Department of Homeland Security "through any means," including "through contracts, grants, or cooperative agreements with non-Federal parties." 28 U.S.C. § 530C(a)(4). Similarly, Congress has also authorized the Secretary to "enter into contracts and other agreements, of any reasonable duration, for detention or incarceration space or facilities, including related services, on any reasonable basis." 18 U.S.C. § 4013 note "Contracts for Space or Facilities" (emphasis added).

46.    Federal statutory directives and a comprehensive set of federal detention standards known as the Performance Based National Detention Standards ("PBNDS") govern the operation of private detention facilities. The current PBNDS were implemented and incorporated into ICE contracts at the direction of Congress. The Joint Explanatory Statement and House Report 114-668, which accompany the Fiscal Year (FY) 2017 Department of Homeland Security (DHS) Appropriations Act (Pub. L. 115-31) evince this direction. The Joint Explanatory Statement says: "Within 45 days after the enactment of this Act, ICE shall report on its progress in implementing the 2011 Performance Based National Detention Standards, including the 2016 revisions…" 163 Cong. Rec. H3812 (2017). House Report 114-668 states: "Within 45 days after the date of enactment of this Act, ICE shall report on its progress in implementing the 2011 [PBNDS] and requirements related to [PREA], including a list of facilities that are not yet in compliance; a schedule for bringing facilities into compliance; and current year and estimated future year costs associated with compliance." H.R. Rep. No. 114-668, at 35.

47.    The comprehensive framework enacted by Congress regarding the detention of aliens for removal leads to the conclusion that the federal government has occupied the field. *See Arizona v. United States*, 567 U.S. 387, 401 (2012) ("*Arizona II*"); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 420, n.11 (2003); *see also* Viet D. Dinh, Reassessing the Law of Preemption, 88 Geo. L.J. 2085, 2098-

2099, 2107 (2000). Where Congress occupies an entire field, as it has in the field of alien detention pending removal, even complementary state regulation is impermissible. Accordingly, Plaintiff's attempts to enter the Delaney Hall Facility to conduct inspections are unconstitutional and invalid because they are preempted by Congress' occupation of the entire field of alien detention pending removal. *See Newsom*, 50 F.4th at 761-763 (2022).

### E.    Federal Preemption—Obstacle

48.    As early as *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824), Chief Justice Marshall stated the governing principle—that "acts of the State Legislatures …[which] interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution," are invalid under the Supremacy Clause. *Id.* at 211 (emphasis added). More than 100 years later Justice Black, after reviewing the precedents, wrote in a similar vein that, while:

> [t]his Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, has made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference    In the final analysis, . . [o]ur primary function is to determine whether [a challenged state statute] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Under the doctrine of conflict preemption, "state laws are preempted when they conflict with federal law." *California*, 921 F.3d at 878 (quoting *Arizona II*, 567 U.S. at 399). This includes cases

where "compliance with both federal and state regulations is a physical impossibility," and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 879 (quoting *Arizona II*, 567 U.S. at 399 (internal quotation marks omitted)); *Murphy v. NCAA*, 138 S. Ct. 1461, 1476 (2018).

49.    Plaintiff's assertion of authority to override ICE's determination that the Delaney Hall Facility meets ICE's requirements for contract award presents a direct conflict with the objectives of Congress. Allowing Newark to exercise a virtual power of review over ICE's contracting decision through the discriminatory application of local, State, and administrative codes stands as an impermissible obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

50.    The existence of a single removable claim allows removal of the entire action. 28 U.S.C. § 1441(c). *Lepucki v. Van Wormer*, 765 F.2d 86, 89 (7th Cir. 1985); *see also National Audubon Society v. Dept. of Water*, 496 F.Supp. 499, 509 (E.D. Cal. 1980).

## VI.    GROUNDS FOR REMOVAL – DIVERSITY OF CITIZENSHIP

51.    This Court also has original jurisdiction over this action based on 28 U.S.C. § 1332(a)(2) and 1441 because it is a civil action between Plaintiff, a citizen of New Jersey, and GEO, a citizen of Florida, where it is incorporated and has its

principal place of business, and the matter in controversy is alleged to exceed the sum or value of $75,000, exclusive of interest and costs.

### A.    Complete Diversity of Citizenship

52.    Pursuant to 28 U.S.C. §§ 1332 and 1441, a civil action is removable if there exists complete diversity between the parties and no defendant is a citizen of the state in which an action is brought.  There is complete diversity of citizenship between Plaintiff and GEO in this action.

53.    Plaintiff is a municipality located in New Jersey.  (Compl. ¶ 2.)

54.    GEO is a corporation incorporated in the state of Florida, with its principal place of business in Boca Raton, Florida.  Therefore GEO is a citizen of Florida.

### B.    Amount in Controversy Exceeds $75,000

55.    The amount in controversy in this action exceeds $75,000.  Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014).  To establish the amount in controversy, a notice of removal "need not contain evidentiary submissions."  *Id.*  Rather, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id.* at 89.

56.     The Complaint seeks "injunctive relief to require the Defendant from ceasing the challenged conduct."  Compl. ¶¶ 32, 38, 44, 48  & Prayer.  Without conceding the merits of Plaintiff's claims, the value of the injunctive relief, whether evaluated from Plaintiff's or Defendant's perspective, would far exceed $75,000.

57.     The Complaint also seeks attorneys' fees.  *See* Compl., Prayer. Attorneys' fees authorized by statute count toward the amount in controversy.  *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("Although 28 U.S.C. § 1332 excludes "interest and costs" from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees … such fees may be included in the amount in controversy").  GEO anticipates the attorneys' fees incurred in responding to the Complaint will also exceed $75,000.

58.     In the aggregate, the value of the injunctive relief sought and attorney's fees exceed $75,000.

59.     Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

## VII.   <u>NOTICE OF REMOVAL IS TIMELY</u>

60.    This Notice is also timely under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of service of Plaintiff's March 31, 2025 the Complaint, which has not yet been served.

61.    Notice of this removal has been filed with the state court and provided to all adverse parties by the initial removing defendant pursuant to 28 U.S.C. § 1446(d).

62.    In accordance with the time requirements of Fed. R. Civ. P. 81(c), Defendant will answer or present other defenses or objections. Defendant does not waive and, to the contrary, expressly preserves, any and all rights and defenses it may assert by motion or otherwise with respect to the action and Complaint.

WHEREFORE, Defendant The GEO Group, Inc., pursuant to the statutes and authorities identified above hereby removes this action.

Dated: April 1, 2025                    DAVIS WRIGHT TREMAINE LLP

                                        By: */s/ Geoffrey S. Brounell*
                                            Geoffrey S. Brounell

                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY 10020-1104
                                        geoffreybrounell@dwt.com

                                        Nicole Phillis (*pro hac vice application
                                        forthcoming*)
                                        Mark Burnside (*pro hac vice application
                                        forthcoming*)
                                        350 South Grand Avenue, 27th Floor
                                        Los Angeles, CA 90071-3487
                                        nicolephillis@dwt.com

                                        THE GEO GROUP, INC.

                                        Scott A. Schipma (*pro hac vice application
                                        forthcoming*)
                                        Joseph Negron, Jr. (*pro hac vice application
                                        forthcoming*)
                                        4955 Technology Way
                                        Boca Raton, FL  33431
                                        scott.schipma@geogroup.com
                                        jnegron@geogroup.com

                                        *Attorneys for Defendant The GEO Group,
                                        Inc., incorrectly sued as GEO Re-Entry
                                        Group,  LLC*

26

## **CERTIFICATION**

Pursuant to Local Civil Rule 11.2, the undersigned hereby certifies that the

matters raised herein are not the subject of any other pending lawsuit, arbitration or

administrative proceeding except the state court action which is being removed.

Dated: April 1, 2025                    DAVIS WRIGHT TREMAINE LLP


By: */s/ Geoffrey S. Brounell*_____
        Geoffrey S. Brounell

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
geoffreybrounell@dwt.com

*Attorneys for Defendant The GEO Group,*
*Inc., incorrectly sued as GEO Re-Entry*
*Group,  LLC*