## UNITED STATES DISTRICT COURT
## OF NEW JERSEY

...................................................... x

CITY OF NEWARK,                          :

                        Plaintiff,    :    No. 2:25-cv-02225-JKS-LDW

        - against -                     :

GEO RE-ENTRY GROUP, LLC and              :    Motion Day:  May 5, 2025
ABC CORPS. (A FICTITIOUS                 :
COMPANY) 1-100,                          :

               Defendants.    :

...................................................... x

## DEFENDANT THE GEO GROUP, INC.'S MOTION TO JOIN A NECESSARY PARTY AND DISMISS OR, IN THE ALTERNATIVE, ORDER A MORE DEFINITE STATEMENT

**DAVIS WRIGHT TREMAINE LLP**
Geoffrey S. Brounell
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Tel:  (212) 489-8230
geoffreybrounell@dwt.com

*Attorneys for Defendant*
*The GEO Group, Inc., incorrectly sued as*
*GEO Re-Entry Group, LLC*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................1

II.    BACKGROUND ........................................................................................4

    A.    New Jersey's Attempt to Ban Federal Immigration Enforcement.......4

    B.    This Court's Prior Orders Finding AB 5207 Unconstitutional............5

        1.    *CoreCivic, Inc. v. Murphy*...................................................5

        2.    *GEO v. Murphy* ..................................................................6

    C.    ICE Contract Award for the Delaney Hall Facility..............................6

    D.    Newark's Promise to "Padlock" the Delaney Hall Facility to Halt
        Immigration Enforcement ....................................................................7

    E.    Newark Declined To Make An Appointment With ICE To
        Access The Delaney Hall Facility........................................................9

    F.    Procedural History................................................................................9

III.    ARGUMENT............................................................................................10

    A.    The Court Should Find ICE Is a Necessary Party to This Action
        and Dismiss Pursuant to Rules 12(b)(7) and Rule 19 ........................12

        1.    ICE Is a Necessary Party Under Rule 19(a)(1)(A) & (B).........12

            a.    Rule 19(a)(1)(A): Complete Relief Is Not Possible.......12

            b.    Rule 19(a)(1)(B): ICE Claims an Interest in Delaney
                Hall Operations and Access............................................14

                (1)    Proceeding Without ICE Will Impair and
                      Impede ICE's Interests .........................................18

                (2)    Proceeding Without ICE Would Subject GEO
                      To Substantial Risk of Inconsistent Obligations..19

i

2.      After Concluding That ICE Is a Necessary Party, the Court
        Should Dismiss ..........................................................................20

        a.      Joinder Is Not Feasible Because ICE Is Immune ..........20

        b.      This Action Must Be Dismissed ....................................22

B.      In the Alternative, the Court Should Order Plaintiff to File a
        More Definite Statement Under Rule 12(e) ........................................26

IV.     CONCLUSION..............................................................................................29

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Arizona v. United States,*
   567 U.S. 387 (2012)...............................................................16, 17, 18

*Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.,*
   844 F.2d 1050 (3d Cir. 1988) ......................................................13, 26

*Clark v. McDonald's Corp.,*
   213 F.R.D. 198 (D.N.J. 2003)......................................................27, 28

*CoreCivic, Inc. v. Gov. of N.J.,*
   No. 23-2598, *appeal filed* (3d Cir. Aug. 31, 2023) ............................5

*CoreCivic, Inc. v. Murphy,*
   690 F. Supp. 3d 467 (D.N.J. 2023).......................................2, 5, 15, 19

*CoreCivic, Inc. v. Murphy, et al.,*
   Case 3:23-cv-00967-RK-TJB (D.N.J. 2023) ....................................18

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,*
   276 F.3d 1150 (9th Cir. 2002) ............................................................20

*Dep't of Army v. Blue Fox, Inc.,*
   525 U.S. 255 (1999)............................................................................21

*Develcom Funding, LLC v. Am. Atl. Co.,*
   2009 WL 2923064 (D.N.J. 2009) ......................................................20

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC,*
   80 F.4th 223 (3d Cir. 2023) ..........................................................10, 11

*GEO Grp., Inc. v. Newsom,*
   50 F.4th 745 (9th Cir. 2022) ..............................................................14

*Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.,*
   104 F. App'x 218 (3d Cir. 2004) ........................................................11

*Hines v. Davidowitz,*
   312 U.S. 52 (1941)........................................................................16, 17

iii

*Landau v. Barouk*,
  2023 WL 8271805 (D.N.J. 2023) .......................................................12

*Laoye v. United States*,
  2023 WL 2263670 (D.N.J. 2023), *reconsideration denied*,
  2023 WL 4621897 (D.N.J. 2023) ...................................................21, 22

*Mathews v. Diaz*,
  426 U.S. 67 (1976) .........................................................................16

*Nicholas v. CMRE Fin. Servs., Inc.*,
  2009 WL 1652275 (D.N.J. 2009) .......................................................27

*Powell v. Subaru of Am., Inc.*,
  502 F. Supp. 3d 856 (D.N.J. 2020)..........................................27, 28, 29

*Reeves v. Hemsley*,
  2019 WL 2560133 (D.N.J. 2019) ...................................................21, 22

*Republic of Phil. v. Pimentel*,
  553 U.S. 851 (2008)....................................................................23, 26

*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947)........................................................................16

*Rosenzweig v. Brunswick Corp.*,
  2008 WL 3895485 (D.N.J. Aug. 20, 2008) ........................................14

*Swierkiewicz v. Sorema*,
  534 U.S. 506 (2002)........................................................................27

*Tarek Holdings, LLC v. Shockley*,
  2022 WL 13848153 (D.N.J. 2022) ...................................................14

*The Geo Group Inc. v. Philip D. Murphy, et al.*,
  No. 3:24-cv-04990 (D.N.J. 2024)........................................................6

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ...........................................................15

*United States v. Mitchell*,
  445 U.S. 535 (1980)........................................................................21

*White v. Univ. of Cal.*,
  765 F.3d 1010 (9th Cir. 2014) ..........................................................................24

**Federal Statutes**

6 U.S.C. § 112(b)(2)...............................................................15, 17, 18, 22

8 U.S.C.
  § 1225(b).......................................................................................14, 17
  § 1225(g).................................................................................17, 18, 22
  § 1226..........................................................................................14, 17
  § 1226(e)...................................................................................17, 22
  § 1231...............................................................................................17
  § 1231(a).........................................................................................14
  § 1231(g)(1)...................................................................................14

18 U.S.C.
  § 1231(g)(1)...................................................................................15
  § 4013...............................................................................................15

28 U.S.C. § 530C(a)(4) ........................................................15, 17, 18, 22

**State Statutes**

N.J. Stat. Ann.
  § 30:4-8.16(a)...................................................................................4
  § 30:4-8.16(b)(2)............................................................................6

**Rules**

Federal Rules of Civil Procedure
  12(b)(7) ...................................................................................*passim*
  12(e) ........................................................................................*passim*
  19............................................................................................*passim*
  19(a) ...........................................................................3, 11, 12
  19(a)(1) .........................................................................................11
  19(a)(1)(A)..............................................................................10, 11, 12
  19(a)(1)(B)..............................................................................10, 12, 14
  19(a)(1)(B)(i) ...............................................................................12
  19(a)(1)(B)(ii) ........................................................................12, 20
  19(b)........................................................................................*passim*

**Constitutional Provisions**

U.S. Const.
   Article I, § 8, cl. 3-4, 10-13 ...............................................................16
   Supremacy Clause.........................................................................5, 6

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1376
   (3d ed. 2004) ...............................................................................27

City of Newark, *Mayor Ras J. Baraka's Statement on ICE Intention to Open
   Detention Center at Newark's Delaney Hall*, News & Updates (Feb. 27,
   2025), https://www.newarknj.gov/news/mayor-ras-j-statement-on-ice-
   intention-to-open-detention-center-at-newarks-delaney-hall .............................8

New Jersey. Eric Kiefer, *ICE Detention Center In NJ Is First To Open
   Under Trump's New Term* (Feb. 27, 2025, 12:30 PM, *updated* 10:20
   PM), https://patch.com/new-jersey/newarknj/ice-detention-center-nj-first-
   open-under-trumps-new-term ...........................................................7

Steve Strunsky, *'We are all immigrants': Newark rallies against massive
   new ICE detention center* (Mar. 11, 2025 7:45 PM, *updated* Mar. 13,
   2025 7:57 AM), https://www.nj.com/essex/2025/03/newark-mayor-leads-
   detention-center-protest-says-it-needs-local-approval.html ...............................9

Zach Blackburn, *Baraka, protesters say they'll fight against planned ICE
   detention center*, N.J. Globe (Mar. 11, 2025 4:41 PM),
   https://newjerseyglobe.com/immigration/baraka-protesters-say-theyll-
   fight-against-planned-ice-detention-center/........................................................8

Defendant The GEO Group, Inc., incorrectly sued as GEO Re-Entry Group, LLC ("GEO"), respectfully submits this memorandum of law in support of its motion for an order joining U.S. Immigration and Customs Enforcement ("ICE") as a necessary party to this action pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure and thereafter dismissing the case with prejudice pursuant to Rule 19(b) of the Federal Rules of Civil Procedure after concluding that joinder of ICE is infeasible due to the doctrine of sovereign immunity.  In the alternative, GEO is respectfully moving for this Court to order Plaintiff to file a More Definite Statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

## I.      INTRODUCTION

The current action represents the latest in a series of efforts by New Jersey officials to cripple federal immigration enforcement in the state.  In 2021, the New Jersey Legislature attempted to outlaw federal immigration detention operations in New Jersey.  AB 5207 was signed into law on August 20, 2021, and prohibits agreements to detain people for civil immigration purposes and specifically prohibits the State, local government agencies, and private detention facilities from entering into, renewing, or extending immigration detention agreements.  This Court struck down AB 5207 as unconstitutional under the intergovernmental immunity doctrine and federal preemption, finding "the statute is a dagger aimed at the heart of the federal government's immigration enforcement mission and operations."

*CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 493 (D.N.J. 2023).

In February 2025, GEO announced that it had been awarded a 15-year, fixed-price contract by ICE to provide support services for the establishment of a federal immigration processing center at the company-owned, 1,000-bed Delaney Hall Facility in Newark, New Jersey (the "Delaney Hall Facility" or "Delaney Hall"). In response to this announcement, federal, state and local New Jersey elected officials have publicly vowed to "fight like hell" and "fight to the death" against federal immigration enforcement in New Jersey. Newark Mayor Ras Baraka—who is currently a candidate for governor—has attended organized protests outside of the Delaney Hall Facility and proclaimed that "[r]*egardless of the process*, an immigrant detention center is not welcomed here." (emphasis added). Mayor Baraka has also publicly vowed to "padlock the building if necessary" to block federal immigration detention at Delaney Hall.

The current suit represents a transparent attempt by Newark officials to fulfill politically motivated promises and indirectly effectuate the enjoined legislative ban on immigration detention through a misguided and discriminatory application of state and local codes to a federal facility. Critically, Newark's complaint seeks an order from this Court compelling access to the Delaney Hall Facility. The federal contract between ICE and GEO for the Delaney Hall Facility, however, grants ICE the exclusive use of the facility and requires that ICE approve all requests for access

to secure portions of the facility. On March 31, 2025, Newark attempted to obtain access to the Delaney Hall facility and was instructed to schedule an appointment with ICE. Newark refused to schedule that appointment. Instead, it filed suit in state court, which GEO removed to this Court. GEO now moves to join ICE as a necessary party and dismiss the case with prejudice pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure.

ICE is a required party to the current action under Rule 19(a) because: 1) the contract between ICE and GEO grants ICE exclusive use of the Delaney Hall Facility, and 2) ICE must approve all requests for access to all secure portions of the Delaney Hall Facility. As a result, complete relief is not possible without ICE being made a party to the suit since ICE is the only party that can grant Newark the relief it seeks—i.e., entry to the Delaney Hall Facility. Put simply, proceeding without ICE makes absolutely no sense here.

Joining ICE does not end the analysis, however. It is black-letter law that sovereign immunity bars Newark from pressing its claims against a federal agency like ICE. Accordingly, because ICE is a necessary party but joinder is infeasible, the case must be dismissed with prejudice pursuant to Rule 19(b). The United States Supreme Court has recognized that dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. That result is contemplated under the doctrine of sovereign immunity, and

that result is equitable and just in the present circumstances. Accordingly, dismissal is proper because ICE is a necessary party to this dispute which is protected under a straightforward application of sovereign immunity.

In the alternative, GEO is moving for the Court to order Plaintiff to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. The Complaint purports to assert a violation of "City Code" but does not cite to a single code, "City" or otherwise in its pleading. Plaintiff must re-plead its Complaint to identify the actual codes that have allegedly been violated.

## II.    BACKGROUND

### A.    New Jersey's Attempt to Ban Federal Immigration Enforcement

On January 4, 2021, AB 5207 was introduced in the New Jersey Legislature. Governor Murphy signed AB 5207 into law on August 20, 2021, and the statute took immediate effect.    AB 5207 prohibits agreements to detain people for civil immigration purposes and specifically prohibits the State, local government agencies, and private detention facilities from entering into, renewing, or extending immigration detention agreements. The Delaney Hall Facility is a "private detention facility" as defined in AB 5207. ICE's current contract with GEO for secure residential support services at the Delaney Hall Facility is an "[i]mmigration detention agreement," within the meaning of AB 5207, N.J. Stat. Ann. § 30:4-8.16(a).

**B.**      **This Court's Prior Orders Finding AB 5207 Unconstitutional**

**1.**      *CoreCivic, Inc. v. Murphy*

In February of 2023, CoreCivic, Inc. ("CoreCivic") filed a complaint contending that AB 5207 violates the Supremacy Clause by precluding CoreCivic and ICE from renewing an existing contract and seeking to enjoin Defendants Philip D. Murphy, the Governor of New Jersey, and Matthew J. Platkin, the Attorney General of New Jersey, from enforcing AB 5207 against Plaintiff with respect to its relationship with ICE. On August 29, 2023, Judge Kirsch issued an opinion granting summary judgment for CoreCivic, declaring AB 5207 unconstitutional as applied against CoreCivic, and enjoining Defendants from enforcing AB 5207 against Core Civic. *CoreCivic, Inc.*, 690 F. Supp. 3d at 493. In reaching that decision, the *CoreCivic* court noted:

> The detention of any person — whether by the federal or State government, in a state-run or privately-run facility — raises health and safety concerns. However, New Jersey's disagreement with the manner in which ICE detains individuals for civil immigration violations, or that the federal government detains individuals for civil immigration violations at all, does not permit AB 5207's intrusion into this uniquely federal function. If New Jersey objects to how the federal government carries out its detention operations, it should use its voice, through its nationally elected representatives and federal elections, to make its objection heard.

*Id.*[1]

---

[1] Defendants' appeal from this decision is currently pending. *CoreCivic, Inc. v. Gov. of N.J.*, No. 23-2598, *appeal filed* (3d Cir. Aug. 31, 2023).

2. *GEO v. Murphy*

On April 15, 2024, GEO filed a complaint for declaratory and injunctive relief against Governor Philip D. Murphy and Attorney General Matthew J. Platkin seeking an order of the court finding AB 5207 violates the Supremacy Clause of the United States Constitution and is unconstitutional as applied to GEO in its provision of contracted immigration detention facility services for ICE in the state of New Jersey. Complaint, *The Geo Group Inc. v. Philip D. Murphy, et al.*, No. 3:24-cv-04990 (D.N.J. 2024) ("*GEO v. Murphy*"), ECF No. 1. On April 25, 2024, this Court entered a Consent Order preliminarily enjoining Defendants "from enforcing N.J. Stat. Ann. § 30:4-8.16(b)(2) against a private detention facility—including any owned by Plaintiff GEO—until a further Order of this Court." Consent Order at 1, *GEO v. Murphy*, ECF No. 11. A copy of the Consent Order was attached to GEO's notice of removal in this case. *See* ECF No. 1.

C.    **ICE Contract Award for the Delaney Hall Facility**

In February 2025, ICE announced the imminent reopening of the Delaney Hall Facility, and on February 27, 2025, GEO announced that it had been awarded a 15-year, fixed-price contract by ICE for secure residential support services and the exclusive use of the 1,000-bed Delaney Hall Facility (the "ICE Contract") for the establishment of a federal immigration processing center in Newark, New Jersey. *See* ECF Nos. 1-3 & 1-4. The ICE Contract grants ICE exclusive use of the Delaney

6

Hall Facility and provides that ICE exercises exclusive control over all access to secure portions of the facility. *See* ECF No. 2 ¶ 4. All requests for access to the secure portions of the Delaney Hall Facility must obtain pre-clearance approvals by ICE, including all requests for access by federal and state employees, as well as GEO employees. *See* ECF No. 2 ¶ 10.

**D.    Newark's Promise to "Padlock" the Delaney Hall Facility to Halt Immigration Enforcement**

Almost immediately after ICE announced the imminent reopening of the Delaney Hall Facility, New Jersey elected officials vowed to "fight like hell" and "fight to the death" against federal immigration enforcement in New Jersey. Eric Kiefer, *ICE Detention Center In NJ Is First To Open Under Trump's New Term*, Patch.com (Feb. 27, 2025, 12:30 PM, *updated* 10:20 PM), https://patch.com/new-jersey/newarknj/ice-detention-center-nj-first-open-under-trumps-new-term. U.S. Rep. LaMonica McIver, who represents Newark and other 10th District municipalities in the House of Representatives, decried the announcement from ICE:

> The Delaney Hall contract is in direct opposition to the will of the people here in Newark, she said. I denounced the potential opening of this facility earlier this month alongside my colleagues from New Jersey because privately owned detention centers degrade public trust in our institutions—the lack of transparency often leads to poor conditions and longer sentences.

*Id.*

Similarly, Newark Mayor Ras Baraka, a candidate for New Jersey governor, has vowed to block federal immigration detention at the Delaney Hall Facility:

> ***Regardless of the process***, an immigrant detention center is not welcomed here.  ICE's stated intention to round up 'criminals' is a thin veil that does not conceal their scheme to violate people's rights, desecrate the Constitution, and disassemble our democracy.

City of Newark, *Mayor Ras J. Baraka's Statement on ICE Intention to Open Detention Center at Newark's Delaney Hall*, News & Updates (Feb. 27, 2025), https://www.newarknj.gov/news/mayor-ras-j-statement-on-ice-intention-to-open-detention-center-at-newarks-delaney-hall.  (emphasis added).  On March 11, 2025, Mayor Baraka appeared outside the Delaney Hall Facility with about 300 immigrants' rights advocates and other opponents of the facility demonstrating in the parking lot.  According to media reports:

> The mayor said progressives must resist Republican leaders not just on immigration but also on issues like Medicaid and diversity, equity, and inclusion, which he says are under attack.
>
> This is what we do in our community in Newark, because this is a city of immigrants, Baraka said.  It has always been a city of immigrants, and a city of working people, and a port city trying to find a journey towards democracy.

Zach Blackburn*, Baraka, protesters say they'll fight against planned ICE detention center*, N.J. Globe (Mar. 11, 2025 4:41 PM), https://newjerseyglobe.com/immigration/baraka-protesters-say-theyll-fight-against-planned-ice-detention-center/.  Mayor Baraka also reportedly vowed to "padlock the building if necessary" to block federal operation of the Delaney Hall Facility:

8

> Newark Mayor Ras J. Baraka said Tuesday that the private owner of an
> immigrant detention center lacks city planning board approval and a
> certificate of occupancy to open, and that his administration will file a
> lawsuit and padlock the building if necessary to block its opening
> without the necessary approvals.

Steve Strunsky, *'We are all immigrants': Newark rallies against massive new ICE*

*detention center*, NJ.com (Mar. 11, 2025 7:45 PM, *updated* Mar. 13, 2025 7:57

AM), https://www.nj.com/essex/2025/03/newark-mayor-leads-detention-center-

protest-says-it-needs-local-approval.html.

**E.    Newark Declined To Make An Appointment With ICE To Access The Delaney Hall Facility**

On March 31, 2025, Mayor Baraka and Newark City representatives

requested entry to the Delaney Hall Facility to conduct inspections.    GEO

communicated Newark's demand to ICE.    ICE instructed that the City of Newark

officials would need to schedule an appointment with ICE.    GEO advised the City

of Newark officials of this instruction, but they declined to make the appointment at

that time.    *See* ECF No. 2 ¶¶ 5-9.

**F.    Procedural History**

On April 1, 2025, Newark filed a Complaint against GEO in the Superior

Court of New Jersey, Law Division, Essex County, bearing Docket No. ESX-L-

002510-25.    GEO timely and properly removed the case to this Court on that same

day.    *See* ECF Nos. 1-5.    During the two status conferences held before the Court on

April 4, 2025, both the Plaintiff's counsel and the Court advised undersigned counsel

for GEO that neither Plaintiff nor the Court intended to challenge GEO's asserted bases for federal jurisdiction. Accordingly, there is no dispute that jurisdiction is proper before this Court.

GEO now moves to join ICE as a necessary party pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure and dismiss this case with prejudice pursuant to Rule 19(b) of the Federal Rules of Civil Procedure, or, in the alternative, to order Plaintiff to file a More Definite Statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

## III.    ARGUMENT

Under Rule 12(b)(7), a party may move to dismiss a case for failure to join a necessary and indispensable party, as defined by Rule 19. The Third Circuit has set forth a three-step inquiry to determine whether a case should be dismissed under Rule 12(b)(7). *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 232 (3d Cir. 2023). These steps include:

1) Considering the qualifications under Rule 19(a)(1)(A) and (a)(1)(B), should the absent party be joined?;

2) If so, is joinder feasible—that is, can the party be joined without depriving the court of the ability to hear the case?;

3) If joining the party is not feasible, should the action continue in the party's absence or be dismissed?

*Id*.

10

When considering a motion to dismiss for failure to join a necessary and indispensable party, courts first determine whether an absent "party is necessary to an action" under Rule 19(a). *Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.*, 104 F. App'x 218, 221 (3d Cir. 2004). Under Rule 19(a)(1), a party is necessary or "required" if, among other reasons,

> (A)    in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The Third Circuit has confirmed that courts should make decisions under Rule 19 based on "'factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.'" *Epsilon Energy USA, Inc.*, 80 F.4th at 232 (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 (1968)).

In this case, the Court should find that ICE is a necessary party under Rule 19. Under Rule 19(a)(1)(A), complete relief is not possible because only ICE can grant the requested relief, i.e., access to the Delaney Hall Facility. Under

Rule 19(a)(1)(B), ICE—the absent party—claims an interest in the operations of the Delaney Hall Facility as it is, by Congressional statute, the entity with the authority to detain noncitizens while removal proceedings are in progress. Furthermore, under Rule 19(a)(1)(B)(i), proceeding without ICE would impair ICE's interest in managing the conditions of immigration detention, which is a responsibility assigned to it by Congress through statute. And even if ICE did not have interest in managing its facilities, under Rule 19(a)(1)(B)(ii), ICE's absence in this suit would subject GEO to substantial risk of inconsistent obligation because it does not have the power to grant the access Plaintiff is seeking by this action.

After concluding ICE is a necessary party under Rule 19(a), the Court should dismiss the Complaint with prejudice because joinder is not feasible under Rule 19(b) since ICE is protected by sovereign immunity. Accordingly, under the factors articulated under Rule 19(b), the Court should find dismissal is required because ICE, as a required entity, is not amenable to suit.

**A.    The Court Should Find ICE Is a Necessary Party to This Action and Dismiss Pursuant to Rules 12(b)(7) and Rule 19**

**1.    ICE Is a Necessary Party Under Rule 19(a)(1)(A) & (B)**

**a.    Rule 19(a)(1)(A): Complete Relief Is Not Possible**

A court is able to afford "complete relief" for purposes of Rule 19 when a party's absence does not prevent the plaintiffs from receiving their requested relief. Fed. R. Civ. P. 19(a)(1)(A); *see, e.g.*, *Landau v. Barouk*, 2023 WL 8271805, at *6

(D.N.J. 2023) (denying request for joinder because movant had not proven absent party needed to be joined to "accord complete relief").   Rule 19 "'stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.'"  *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 n.5 (3d Cir. 1988) (quoting Fed. R. Civ. P. 19 Advisory Committee Notes).

This Court here cannot grant "complete relief" among the existing parties in ICE's absence.  Newark seeks an order compelling GEO to allow Newark access to the Delaney Hall Facility to conduct inspections.  Only ICE can grant this relief, however.  All requests for access to the secure portions of the Delaney Hall Facility must obtain pre-clearance approvals from ICE, including all requests for access by federal and state employees.  ECF No. 2 ¶ 10.  It is undisputed that GEO is without independent authority to provide the requested access to the secure portions of the Delaney Hall Facility absent ICE clearance and approval.  *See id.*  Indeed, when Newark attempted to access the secure portion of the Delaney Hall Facility on March 31, 2025, it was an ICE official who required that Newark to make an appointment with ICE.  ECF No. 2 ¶ 6.  Simply stated, GEO is without the authority—whether

ordered by this Court or not—to grant Newark the access to the Delaney Hall Facility that Newark seeks.  Only ICE can grant that access.

Under these circumstances, an order compelling GEO—but not ICE—to grant Newark the requested access would be hollow relief that would only spur additional suits.  As a result, this Court is unable to grant "complete relief" among the existing parties absent the inclusion of ICE as a party.  *See, e.g.*, *Tarek Holdings, LLC v. Shockley*, 2022 WL 13848153, at *5 (D.N.J. 2022) (granting motion to dismiss because complete relief was not possible without absent party and their joinder would have destroyed diversity jurisdiction); *Rosenzweig v. Brunswick Corp.*, 2008 WL 3895485, at *10 (D.N.J. Aug. 20, 2008) (granting motion to dismiss because complete relief was not possible without absent party and contract required adjudication of claims in Connecticut).

### b.    Rule 19(a)(1)(B): ICE Claims an Interest in Delaney Hall Operations and Access

As part of its operations administering the immigration system, the Department of Homeland Security ("DHS") detains certain noncitizens pending the completion of removal proceedings or while awaiting removal.  *See* 8 U.S.C. §§ 1225(b), 1226, 1231(a).  Congress authorized DHS to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," *id*. § 1231(g)(1), and has directed that DHS "should favor the use of existing facilities for immigration detention, whether through purchase or lease."  *GEO Grp.,*

*Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (en banc); *CoreCivic, Inc.*, 690 F. Supp. 3d at 471-72 (citing 8 U.S.C. § 1231(g)).

Congress also specifically granted the Secretary of Homeland Security broad authority "to make contracts . . . as may be necessary and proper to carry out the Secretary's responsibilities." 6 U.S.C. § 112(b)(2). Similarly, Congress granted authority to "carr[y] out," "in the reasonable discretion of the Attorney General," the activities of ICE "through any means, including . . . through contracts, grants, or cooperative agreements with non-Federal parties[,]" except to the extent that such agreements are otherwise precluded by federal law. 28 U.S.C. § 530C(a)(4). In 2000, Congress enacted a statute stating: "[n]otwithstanding any other provision of law, . . . the Attorney General hereafter may enter into contracts and other agreements, of any reasonable duration, for detention or incarceration space or facilities, including related services, on any reasonable basis." 18 U.S.C. § 4013, note. Through these statutes, Congress has authorized ICE to use private contracted detention facilities and services contractors. *See CoreCivic, Inc.*, 690 F. Supp. 3d at 472; *United States v. California*, 921 F.3d 865, 882 n.7 (9th Cir. 2019) (18 U.S.C. § 1231(g)(1) "contemplates use of both federal facilities and nonfederal facilities with which the federal government contracts"). The Delaney Hall Facility is one such contracted facility where DHS, through ICE, detains aliens pending removal or a decision on removal.

As explained in *Hines v. Davidowitz*, 312 U.S. 52, 64-66 (1941), the detention of aliens implicates both the federal government's interest in a "uniform" immigration system and in the conduct of foreign relations. *Id*.; *see also, e.g.*, *Arizona v. United States*, 567 U.S. 387, 394-95 (2012) (noting that "foreign countries concerned about the status, safety, and security of their nationals in the United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate States."); *see generally* U.S. Const. art. I, § 8, cl. 3-4, 10-13. Concern for orderly immigration and for the reciprocal treatment of United States citizens detained abroad "make the treatment of aliens, in whatever state they may be located, a *matter of national moment*." *Hines*, 312 U.S. at 73 (emphasis added). Thus, "[a]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations[.]" *Mathews v. Diaz*, 426 U.S. 67, 81 n.17 (1976). The circumstances and conditions of confinement are therefore the quintessential "field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947) (citation omitted). "*No state* can add to or take from the force and effect" of federal law governing the detention of aliens. *Hines*, 312 U.S. at 63 (emphasis added). Newark's effort to stifle federal immigration detention through misguided

and discriminatory application of state and local building codes runs directly into a field of dominant federal interests.

More specifically, ICE has significant particularized interests in Newark's attempts to gain access to the Delaney Hall Facility. ICE is responsible for the custody and well-being of immigration detainees at the Delaney Hall Facility. *See* 8 U.S.C. §§ 1225(b), 1226, 1231. ICE exercises control over all access to secure portions of the Delaney Hall Facility. ECF No. 2 ¶¶ 4-6. Indeed, when Newark attempted to access the secure portion of the Delaney Hall Facility on March 31, 2025, it was an ICE official who required that Newark make an appointment with ICE. *Id.* ¶ 6.

Accordingly, it is beyond question that ICE has an interest in Newark's attempts to obtain access to the Delaney Hall Facility to conduct inspections pursuant to state or municipal laws. The conditions of federal detention at the Delaney Hall Facility implicate both the federal government's interest in a "uniform" immigration system and in the conduct of foreign relations. *Hines*, 312 U.S. at 64-66; *see Arizona*, 567 U.S. at 394-95. The conditions surrounding detention at the Delaney Hall Facility is "a matter of national moment[,]" *Hines*, 312 U.S. at 73, that Congress assigned to the discretion of DHS. 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1225(g), 1226(e). There can be no question that ICE has an interest in Newark's attempts to force entry into a federal detention

facility so that Newark can ostensibly conduct inspections of a federal facility under state and local codes.

### (1)    Proceeding Without ICE Will Impair and Impede ICE's Interests

As detailed in Section III.B.1.b *supra*, the U.S. Supreme Court has noted that the detention of aliens and the conditions of immigration detention are of momentous federal interest. Congress specifically assigned responsibility to address these interests to the discretion of DHS and ICE. *See* 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1225(g); 1226(e). Proceeding in this case without ICE to represent and address these dominant federal interests with foreign policy implications would undoubtably impair and impede those interests. *See Arizona*, 567 U.S. at 394-95. Newark's attempts to usurp the authority granted by Congress to ICE and to investigate ICE's performance of responsibilities assigned by Congress to ICE's discretion seek to sidestep principles of sovereign immunity and directly impair and impede ICE's interests and those of the United States.

ICE has previously detailed the serious and manifold federal interests in specifically maintaining necessary federal immigration detention facilities in the Newark area for this Court. *See* Statement of Interest by United States of America, *CoreCivic, Inc. v. Murphy, et al.,* Case 3:23-cv-00967-RK-TJB (D.N.J. 2023), ECF No. 37 at 19-24. ICE has specifically explained that limiting necessary federal immigration detention would in the Newark area have the following consequences:

(1) severe disruption of law-enforcement operations in the area; (2) hinderance of counterterrorism and other law enforcement operations being conducted by the Joint Terrorism Task Force operating out of the FBI's New York and Newark offices; (3) prevention of ICE from detaining noncitizens with violent criminal histories that are released from state and local facilities; (4) relocation of immigration detainees in the Newark area at great cost to the federal government, and; (5) delay and impairment of federal proceedings caused by out-of-state detention—and detainees' concomitant lack of access to their families—that may slow immigration proceedings. *Id.* This Court's parting observation in *CoreCivic, Inc.* is equally apt to the City of Newark's actions in the present case: "[a]lthough reference to the federal government was conveniently omitted . . . the statute is a dagger aimed at the heart of the federal government's immigration enforcement mission and operations." *CoreCivic, Inc.*, 690 F. Supp. 3d at 493.

### (2)    Proceeding Without ICE Would Subject GEO To Substantial Risk of Inconsistent Obligations

It is manifest that proceedings in the current action conducted without ICE as a party would subject GEO to a substantial risk of inconsistent obligations. An injunction requiring GEO to allow Newark access to secure portions of the Delaney Hall Facility would directly conflict with ICE's control over access to the Delaney Hall Facility. Indeed, when Newark requested access to Delaney Hall Facility on March 31, 2025, it was an ICE official who required that Newark make an

appointment with ICE. ECF No. 2 ¶ 6. Therefore, it requires little speculation to conclude that proceeding without ICE would subject GEO to a "substantial risk of imposing inconsistent obligations." *Develcom Funding, LLC v. Am. Atl. Co.,* 2009 WL 2923064, at *3 (D.N.J. 2009) (finding substantial risk of inconsistent obligations where defendant would potentially face injunction mandating the immediate cessation of the deposit of dredge spoil while state court could allow that same deposit to continue); *see Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d 1150, 1156 (9th Cir. 2002) (finding substantial risk of inconsistent obligations where defendant would potentially face injunction mandating actions that would conflict with its contractual obligations to a non-party sovereign).

Proceeding without ICE may force GEO into an untenable position of having to mediate directly conflicting orders from ICE and this Court. And certainly, Newark will undertake additional enforcement actions against GEO. The circumstances of the present case satisfy the requirements of Rule 19(a)(1)(B)(ii).

### 2. After Concluding That ICE Is a Necessary Party, the Court Should Dismiss

#### a. Joinder Is Not Feasible Because ICE Is Immune

Joinder is not feasible in this context because it is black-letter law that ICE is immune from suit under the doctrine of sovereign immunity.

Federal agencies are immune from suit unless Congress has specifically authorized suits against them. "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (alterations and citation omitted). To that end, this Court has repeatedly held that ICE is immune from civil suits. *See*, *e.g., Laoye v. United States*, 2023 WL 2263670, at *5 (D.N.J. 2023) ("[F]ederal agencies and entities, like ICE are also immune from suit in civil rights matters, because they have not explicitly waived sovereign immunity[.]"), *reconsideration denied*, 2023 WL 4621897 (D.N.J. 2023); *Reeves v. Hemsley*, 2019 WL 2560133, at *7 (D.N.J. 2019) ("The United States—and by extension, ICE—has sovereign immunity except where it consents to be sued.").

Thus, "'[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Dep't of Army v. Blue Fox, Inc*., 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Waivers of sovereign immunity must be "unequivocally expressed" in statutory text, and the waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign. *Dep't of Army*, 525 U.S. at 261. Like any other federal agency, therefore, ICE is protected by sovereign immunity apart from any express

statutory waiver. *See, e.g.*, *Laoye*, 2023 WL 2263670, at *5; *Reeves*, 2019 WL 2560133, at *7.

GEO is unaware of any explicit waiver of sovereign immunity for state claims against ICE seeking forced access to secure federal ICE detention facilities for the purpose of conducting inspections regarding compliance with local, state and administrative codes. In fact, Congress specifically assigned responsibility to address the conditions of immigration detention to the discretion of DHS and ICE. *See* 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1225(g), 1226(e).

For the foregoing reasons, ICE is plainly immune from Plaintiff's claims.

### b.    This Action Must Be Dismissed

Under Rule 19(b), when a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties:

> (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
>> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties
>>
>> (2) the extent to which any prejudice could be lessened or avoided by:
>>
>>> (A) protective provisions in the judgment;
>>> (B) shaping the relief; or
>>> (C) other measures;

> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The Supreme Court has held that a "case may not proceed when a required-entity sovereign is not amenable to suit." *Republic of Phil. v. Pimentel*, 553 U.S. 851, 866-67 (2008) (citing *Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371, 373-375 (1945) (dismissing an action where the Under Secretary of the Navy was sued in his official capacity because the Government was a required entity that could not be joined when it withheld consent to be sued); *Minn. v. United States*, 305 U.S. 382, 386-388 (1939) (dismissing the action for nonjoinder of a required entity where the United States was the owner of the land in question but had not consented to suit)). The *Pimentel* Court summarized the primacy of sovereign immunity in the Rule 19(b) analysis and stated: "[t]hese cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Pimentel*, 553 U.S. at 867.

Similarly, as other courts have recognized, the potentially dispositive nature of sovereign immunity should be viewed as compelling factor when evaluating the standard under Rule 19(b):

Although Rule 19(b) contemplates balancing the factors, "when the necessary party is immune from suit, there may be 'very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.'" *Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460 (9th Cir. 1994) (quoting *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991)).  As the district court correctly noted, "virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether a remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." (citing *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002); *Manybeads v. United States*, 209 F.3d 1164 (9th Cir. 2000); *Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999); *Kescoli v. Babbitt*, 101 F.3d 1304 (9th Cir. 1996); *McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989).)

*White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014).  The *White* court concluded this "wall of circuit authority" supported dismissal without balancing under Rule 19(b) when the required sovereign party was immune from suit.  *Id.*  For these reasons, no balancing is required under Rule 19(b), and dismissal of Newark's current action is necessary because ICE is a required party and is immune from suit.

Moreover, even if this Court examined each of the factors in Rule 19(b), dismissal would be required.

First, as detailed in Section III.B.1.b *supra*, proceeding without ICE will prejudice both ICE and GEO.  The adequacy of the physical characteristics and conditions of federal detention facilities used for immigration detainees in the custody of ICE involves dominant federal interests with serious foreign policy implications.  Permitting Newark access to the Delaney Hall Facility without prior

24

ICE authorization so it can investigate alleged violations of local, state and administrative codes would significantly prejudice ICE's dominant federal interests. This risk or prejudice is particularly acute in light of New Jersey's unrelenting opposition to federal immigration enforcement in the state. Indeed, the conclusions and findings of any sham "inspections" performed by Newark have already been clearly telegraphed by Mayor Baraka's repeated promises to "padlock" the facility. *See* Strunsky, *supra*. Similarly, GEO would be prejudiced by proceeding without ICE as ICE controls the requested access, and GEO faces a substantial risk of an injunction mandating actions that would conflict with its contractual obligations to a non-party sovereign. *See* ECF No. 2 ¶¶ 10-11. Consequently, proceeding without ICE would likely force GEO into an untenable position of having to mediate directly conflicting orders from ICE and this Court.

Second, the prejudice to ICE and GEO cannot be avoided by any tailored remedy. The Court, in responding to Newark's claims, must either (1) mandate state access to secure federal facilities and afford the state illusory and unconstitutional oversight and authority to dictate the conditions of federal detention, or (2) deny the same. No tailored remedy is possible that would avoid far-reaching prejudice to ICE and GEO.

Third, a judgment in ICE's absence would not be adequate. As detailed in Section III.B.1.a *supra*, GEO is without authority to provide the requested access to

the secure portions of the Delaney Hall Facility absent ICE clearance and approval. *See* ECF No. 2 ¶¶ 10-11.  A judgment against GEO alone would be "hollow relief" that would only spur additional suits.  *See Bank of Am. Nat. Tr.*, 844 F.2d at 1054 n.5 (quoting Fed. R. Civ. P. 19 Advisory Committee Notes).

Finally, when the required absent party is a sovereign and immune from suit, the lack of an adequate remedy does not militate against dismissal.  As observed by the Supreme Court, "[d]ismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims." *Pimentel*, 553 U.S. at 872.  "But," the Court concluded, "that result is contemplated under the doctrine of foreign sovereign immunity."  *Id.*  The same is true for the sovereign immunity of the United States and its agencies.

Because ICE is a necessary and indispensable party to this suit, while also being immune to suit under the doctrine of sovereign immunity, Newark's claims should be dismissed with prejudice.

## B.    In the Alternative, the Court Should Order Plaintiff to File a More Definite Statement Under Rule 12(e)

In the alternative—if the Court does not dismiss this case with prejudice for the reasons just stated—the Court should order Plaintiff to file a more definite statement in support of its claims pursuant to Rule 12(e).

Rule 12(e) provides a mechanism by which a party can seek relief when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a

response." As the United States Supreme Court has explained, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema*, 534 U.S. 506, 513-14 (2002).

Rule 12(e) ensures that parties are not required to respond to vague or ambiguous pleadings. Thus, if the pleading at issue is so vague or ambiguous that the opposing party cannot respond to it, then the opposing party is entitled to a more definite statement. *See id.*; 5C Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1376 (3d ed. 2004). As this Court has observed, a motion for a more definite statement is proper when the "pleading is too vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 898 (D.N.J. 2020); *see also, e.g.*, *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003) (same). Further, "[w]hen a complaint does not provide a defendant notice of the facts underlying the plaintiff's claim(s), [such that] the defendant cannot adequately frame a proper response[,] [t]he 'Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying [the] plaintiff's claim for relief.'" *Nicholas v. CMRE Fin. Servs., Inc.*, 2009 WL 1652275, at *1 (D.N.J. 2009) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 301 (3d Cir. 2006)).

This rule squarely applies to the Complaint filed by Plaintiff in this case. *See generally* Compl. The Complaint asserts two counts, both labeled "Violation of City Code," without citation to *one single provision* of the applicable "City Code" that has purportedly been violated. *See generally* Compl. (failing to allege a single citation to any violated code, "City" or otherwise). Plaintiff did file two separate affidavits in connection with their Complaint: the Affidavit of Dolores Martinez Wooden (the "Wooden Affidavit"), *see* ECF No. 1-5 at 20-22, and the Affidavit of Director Ketlen Alsbrook ("Alsbrook Affidavit"), *see* ECF No. 1-5 at 36-37. The Wooden and Alsbrook Affidavits—assuming they are intended to be incorporated into the Complaint by reference, even if there is nothing in any document to indicate such—do contain citations to code, albeit to the "New Jersey Administrative Code," not any "City Code." *See generally* Woodbrook and Alsbrook Affidavits. To further add to the confusion, the Alsbrook Affidavit cites to violations of certain provisions of the New Jersey Administrative Code pertaining to health and food violations, a category of purported violations that is not even *mentioned* in the Complaint. *See* Alsbrook Affidavit. Accordingly, the principle set forth in *Powell* and *Clark* could not apply with more force here: even if GEO were to enter a simple denial, it is not clear what, precisely, it would be denying—violation of an unnamed City Code, or New Jersey Administrative Code codes cited in separate affidavits—and therefore

"[c]annot respond, even with a simple denial, in good faith, without prejudice to [itself]."  *Powell*, 502 F. Supp. 3d at 898.[2]

Accordingly, GEO respectfully requests that the Court direct Plaintiff to amend its Complaint to specify what provisions of the "City Code" were allegedly violated in this case.

## IV.    CONCLUSION

For the foregoing reasons, GEO respectfully requests that the Court order that ICE is a necessary party to this action pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure and thereafter dismiss the case with prejudice pursuant to Rule 19(b) of the Federal Rules of Civil Procedure after concluding that joinder of ICE is infeasible due to the doctrine of sovereign immunity.  In the alternative, GEO respectfully requests that the Court order Plaintiff to file a More Definite Statement in support of its claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

---

[2] Newark's attempt to enforce the "City Code" prior to the initiation of this action likewise did not identify any particular code violation.  The only notice that GEO received concerning the City's attempt to enforce the "City Code" was a "red sticker" that did not identify any purported specific violation, "City Code" or otherwise.

Dated: April 9, 2025

DAVIS WRIGHT TREMAINE LLP

By: */s/ Geoffrey S. Brounell*
    Geoffrey S. Brounell

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
geoffreybrounell@dwt.com

Nicole Phillis
(*pro hac vice application forthcoming*)
Mark C. Burnside
(*pro hac vice application forthcoming*)
350 South Grand Avenue, 27th Floor
Los Angeles, CA 90071-3487
nicolephillis@dwt.com
markburnside@dwt.com

THE GEO GROUP, INC.

Scott A. Schipma
(*pro hac vice application forthcoming*)
Joseph Negron, Jr.
(*pro hac vice application forthcoming*)
4955 Technology Way
Boca Raton, FL 33431
scott.schipma@geogroup.com
jnegron@geogroup.com

*Attorneys for Defendant*
*The GEO Group, Inc., incorrectly sued as*
*GEO Re-Entry Group, LLC*