**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CITY OF NEWARK, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL CASE NO.: 2:25-cv-2225 |
| v. | : |
| | : |
| GEO RE-ENTRY GROUP, LLC; ABC CORP (A | : |
| FICTITIOUS COMPANY) 1-100, | : |
| | : |
| Defendant(s). | : |
| | : |

---

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR
ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE
WITH TEMPORARY RESTRAINTS**

---

**MICHAEL A. ARMSTRONG & ASSOCIATES, LLC**
79 Mainbridge Lane
Willingboro, New Jersey 08046
(609) 877-5511
Michael A. Armstrong, Esquire
Morrison Kent Fairbairn, Esquire
Attorneys for Plaintiff, City of Newark

On the Brief:

Morrison Kent Fairbairn, Esquire
Evan A. Armstrong, Esquire

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES..................................................................... iii

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND FACTS AND PROCEDURAL HISTORY ......................................... 2

ARGUMENT ...............................................................................................7

    POINT I ................................................................................ 9

    THE CITY OF NEWARK WILL LIKELY SUCCEED IN THIS LITIGATION ......... 9

        A.  Defendant is required to adhere to local and State safety laws. 9

        B.  Defendant has failed to comply with local and State safety laws................................................................................12

    POINT II ..............................................................................13

    THE CITY WILL BE IRREPARABLY HARMED IF EMERGENT RELIEF IS NOT GRANTED ............................................................. 13

    POINT III ..............................................................................16

    THE BALANCING OF ANY HARM TO DEFENDANT AGAINST THE PUBLIC INTEREST FAVOR GRANTING THE CITY OF NEWARK'S APPLICATION ................... 16

CONCLUSION...........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Acierno v. New Castle County</u>, 40 F.3d 645, 647 (3d Cir. 1994) ....................6

Airsta Records v. Doe, 604 F.3d 110, 120 (2d Cir.2010) ...................................15

<u>Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ....................................................................................18

<u>Bystron v. Hoover</u>, 456 F. Supp. 3d 635, 642 (M.D. Pa. 2020) .....................13

<u>City of Philadelphia v. Sessions</u>, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) .......................................................................................................14,17

<u>Corporate Synergies Grp., LLC v. Andrews</u>, 775 Fed. Appx. 54 .......................7

<u>Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.</u>, 108 F.4th 194, 201 (3d Cir. 2024) ................................................7

<u>Doe 1 v. Perkiomen Valley Sch. Dist.</u>, 585 F. Supp. 3d 668, 704 (E.D. Pa. 2022) ............................................................................................................17

<u>GJJM Enters., LLC v. City of Atl. City</u>, 293 F. Supp. 3d 509 (D.N.J. 2017) .......................................................................................................................7

<u>Glen Riddle Station, L.P. v. Middletown Twp.</u>, No. CV 21-286, 2021 WL 1141964, at *8 (E.D. Pa. Mar. 25, 2021) ................................................................17

<u>Instant Air Freight Co. v. C.F. Air Freight, Inc.</u>, 882 F.2d 797, 803 (3d Cir. 1989) ............................................................................................................14

<u>J.H. Renarde, Inc. v. Simms</u>, 312 N.J. Super. 195, 2015 (N.J. Ch. 1998) .........................................................................................................................19

<u>McDermott v. Clondalkin Grp., Inc.</u>, 649 Fed. Appx. 263, 268 (3d Cir. 2016) ..........................................................................................................15

<u>New Jersey Staffing All. v. Fais</u>, 751 F. Supp. 3d 419, 428 (D.N.J. 2024) .............................................................................................................9

<u>Parow v. Kinnon</u>, 300 F. Supp. 2d 256, 265 (D. Mass. 2004) ...........................17

<u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d Cir. 2017). ...........8,9

**Statutes**

N.J.A.C. 8:24 .............................................................................................................4

N.J.S.A. 24:3-1 .......................................................................................................11

N.J.S.A. 52:27D-120(e) .........................................................................................11

N.J.S.A. 52:27D-195 ...............................................................................................11

## PRELIMINARY STATEMENT

Protection of health, safety and welfare of the people is the objective of the State of New Jersey statutes that empower and obligate designated city officials to inspect establishments within their city to ensure compliance with local and State safety regulations. The protection of detainees, staff, and contractors from injury and illness is among the objectives of the federal detention standard requiring Contract Detention Facilities to comply with all applicable local safety laws. Defendant, Geo Group, Inc., has defied these objectives and is actively thwarting Plaintiff, City of Newark's ability to inspect and enforce compliance with safety regulations. The reasonable likelihood of success, the seriousness of the irreparable harm at stake, and the compelling and substantial public concern warrant the imposition of injunctive relief and a temporary restraining order requiring Defendant to cease operations until the City can complete the necessary safety inspections and, ultimately, to comply with those safety requirements.

## <u>BACKGROUND FACTS AND PROCEDURAL HISTORY</u>

In support of its application for an Order to Show Cause Why Injunctive Relief Should Not Issue With Temporary Restraints permitting the City of Newark access to Defendant, GEO Group Inc.'s building located at 451 Doremus Avenue in the City of Newark, the City of Newark relies upon the following facts and procedural history as supported by the Declarations of Director Dolores Martinez Wooden, Director Ketlen Alsbrook, and Fire Official Gwendolyn Saleem and the Certification of Morrison Kent Fairbairn and exhibits attached thereto.

1.    Plaintiff, City of Newark (hereinafter "the City"), is a municipality organized pursuant to Title 40 of the New Jersey Statutes, with municipal offices located at 920 Broad Street, Newark, Newark, New Jersey.

2.    Defendant, GEO Group, Inc., which upon information and belief has been improperly plead as Geo Re-entry Group LLC, is the owner of a property and commercial building located at 451 Doremus Ave, Newark, New Jersey 07105, known as Delaney Hall.

3.    Prior to March 2025, the aforementioned building was virtually vacant. (Fairbairn Cert., Ex. A, ¶3).

4.    Media outlets reported that Defendants intended to invest $38 million to renovate the existing facilities. (Wooden Declaration, ¶2).

2

5.    Reporting from media outlets and observation of the property revealed that the property was being leased to new tenants. Id.

6.    A Certificate of Continued Occupancy is warranted if there is a change in tenants or ownership.  Id., ¶4,5.

7.    No Certificate of Continued Occupancy was sought or issued as a result of the recent change in tenants at the property. Id.

8.    Defendants have not filed for any construction permits with the City. Id., ¶11,14.

9.    On March 31, 2025, City Officials appeared at the aforementioned property owned by Defendants for the purpose of conducting inspections.  Id., ¶8.

10.    City Officials were stopped by security at the outside guarded entrance area and explained to the security guard the reason for their presence on Defendant's property.  (Saleem Declaration, ¶5).

11.    During the visit, although not permitted to inspect the interior of the building, City Officials observed that there has been electrical work performed to the annex structure on the parking lot.  (Wooden Declaration, ¶11,13).

12.    Electrical work without a permit creates a serious risk of fire or electrocution. Id., ¶15.

13. It was also observed that there has been plumbing work performed to the annex structure on the parking lot. Id.

14. Plumbing work without a permit creates a serious health risk as off gassing and faulty exhausts may not be built to code. Id.

15. The elevators in the building have not officially been certified or passed any inspection by the UCC or the Fire Department. Id., ¶6, 7.

16. Not having certified and properly working elevators is a life safety hazard for every occupant in the building. Id.

17. Defendants denied the City's Fire Official access to test the elevator recall. (Id., ¶14; Saleem Declaration, ¶5).

18. Four fire code violations to the facility were issued:

    a. failure to provide entry to the facility in violation of Code Section 5:70-2.1(C);

    b. failure to provide an evacuation plan in violation of Code Section 3201.4;

    c. failure to provide a current elevator test report in violation of Code Section 917.1; and

    d. failure to provide a generator test report in violation of Code Section 1203.4.2.1 for the facility's emergency generator.

    Id., ¶7.

19. The New Jersey Department of Health (NJDOH) and local

4

health authorities inspect retail food establishments as often
as deemed necessary, with a focus on food safety and compliance
with N.J.A.C. 8:24 and can issue unsatisfactory ratings for
establishments with violations that pose an imminent health
hazard. (Alsobrook Declaration, ¶10.

20. The local health authority must inspect every retail
food establishment as often as it deems necessary, with a
minimum of one unannounced complete inspection per year. Id.,
¶11.

21. The purpose of inspections of food establishments is
to safeguard the public health by ensuring food safety and
preventing foodborne illnesses, focusing on practices like
proper food handling, temperature control, and sanitation, as
outlined in the New Jersey Sanitary Code. Id., ¶12, 13.

22. Therefore, the denial of entry into the facility poses
risks to safety and an immediate danger to employees, detainees,
and visitors. Id., ¶15.

23. In addition to the above, it is critical for the
Health Department to review the facility's Infection Control
policies to ensure appropriate measures are in place to prevent
the spread of communicable diseases. Id., ¶16.

24.    On April 1, 2025, the City initiated this matter with a Verified Complaint filed in Essex County Superior Court seeking injunctive relief and a temporary restraining order on April 1, 2025. (Fairbairn Cert., ¶3).

25.    That same day, Defendant filed a Notice of Removal on April 1, 2025, asserting that it has a contract for the operation of Delaney Hall with U.S. Immigration and Customs Enforcement ("ICE"). Id., ¶4, 7.

26.    Defendant concedes that "Federal statutory directives and a comprehensive set of federal detention standards known as the Performance Based National Detention Standards ("PBNDS") govern the operation of private detention facilities. Id., ¶8.

27.    The PBNDS cited by Defendant states, in part: "***The expected outcomes of this detention standard are as follows . . . 2. Compliance with all applicable federal, state and local safety and sanitation laws shall be ensured by documented internal and external inspections, and by corrective action when indicated. . . . 3. Compliance with all applicable fire safety codes.***" Id., Ex. C at ¶¶1-3.

28.    From April 7, 2025, to April 8, 2025, Defendant provided contacts for scheduling inspections through ICE that the City attempted to utilize to no avail. Id. at ¶¶12-15.

6

29.  On April 9, 2025, John Tsoukaris, the Field Office Director for ICE, confirmed that ICE has a contract with Defendant that requires Defendant to prepare the facility for ICE and requires Defendant to get all necessary permits and inspections completed for the facility. Id. at ¶17.

30.  According to Mr. Tsoukaris, ICE has no problem authorizing access to the building, except Defendant has advised ICE that they already obtained all necessary permits and inspections. Id. at ¶18.

31.  To date, the City has not been informed that ICE or Defendant will authorize access to the facility for City Officials to conduct the necessary inspections first sought on March 31, 2025. Id. at ¶21; Alsbrook Declaration, ¶15; Saleem Declaration, ¶9; Wooden Declaration, ¶17.

## ARGUMENT

Fed. R. Civ. P. 65 empowers courts to grant preliminary injunctions to enjoin harmful conduct. The primary purpose of a preliminary injunction is "maintenance of the status quo until a decision on the merits of a case is rendered." Acierno v. New Castle County, 40 F.3d 645, 647 (3d Cir. 1994). "In short, 'the most compelling reason' to grant a preliminary injunction is 'to preserve the court's power to render a meaningful decision after

7

a trial on the merits.'" <u>Delaware State Sportsmen's Ass'n, Inc.</u>
<u>v. Delaware Dep't of Safety & Homeland Sec.</u>, 108 F.4th 194, 201
(3d Cir. 2024) (quoting 11A Charles Alan Wright, Arthur R.
Miller & Mary Kay Kane, Federal Practice and Procedure § 2947,
at 112, 114 (3d ed. 2013). To obtain a temporary restraining
order or preliminary injunctive relief, the movant must
establish the following four factors:

> **(1) a reasonable probability of eventual success in
> the litigation, and (2) that it will be irreparably
> injured ... if relief is not granted . . . . In
> addition, the district court, in considering whether
> to grant a preliminary injunction, should take into
> account, when they are relevant, (3) the possibility
> of harm to other interested persons from the grant or
> denial of the injunction, and (4) the public interest.**

<u>GJJM Enters., LLC v. City of Atl. City</u>, 293 F. Supp. 3d 509
(D.N.J. 2017) (quoting <u>Reilly v. City of Harrisburg</u>, 858 F.3d
173, 176 (3d Cir. 2017)); <u>Corporate Synergies Grp., LLC v.</u>
<u>Andrews</u>, 775 Fed. Appx. 54 (3d Cir. 2019) (noting that "the
factors are the same for both temporary restraining orders and
preliminary injunctions"). The first two factors are the "'most
critical.'" <u>Reilly v. City of Harrisburg</u>, 858 F.3d 173, 179 (3d
Cir. 2017).

> **If these gateway factors are met, a court then
> considers the remaining two factors and determines in
> its sound discretion if all four factors, taken
> together, balance in favor of granting the requested
> preliminary relief. In assessing these factors, Judge
> Easterbrook's observation bears repeating: "How strong
> a claim on the merits is enough depends on the balance
> of the harms: the more net harm an injunction can**

**prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."**

Id. "District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" Id. at 178-79 (3d Cir. 2017) quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

## POINT I
## THE CITY OF NEWARK WILL LIKELY SUCCEED IN THIS LITIGATION

Demonstrating a likelihood of success on the merits "requires a showing significantly better than negligible but not necessarily more likely than not." Reilly, 858 F.3d at 179. At this juncture, a plaintiff "need not conclusively establish a likelihood of success on the merits." New Jersey Staffing All. v. Fais, 751 F. Supp. 3d 419, 428 (D.N.J. 2024). Nevertheless, in the instant case, it is readily apparent that the City will prevail.

**A. Defendant is required to adhere to local and State safety laws.**

GEO highlights in its immunity argument that:

> **Federal statutory directives and a comprehensive set of federal detention standards known as the Performance Based National Detention Standards ("PBNDS")** _**govern the operation of private detention facilities**_**. The current PBNDS were**

9

**implemented and *incorporated into ICE contracts at the direction of Congress*.**

(Pl. Notice of Removal ¶ 46) (Emphasis supplied).  The PBNDS, which can be found on ICE's website, are "implemented and incorporated into ICE contracts *at the direction of Congress*" as GEO points out, and therefore, the standards cannot be waived. A review of the PBNDS, reveals that Contract Detention Facilities (CDFs) are expected to act in accordance with the following objectives that are relevant to this case:

1.  Compliance with *all applicable* federal, *state and local safety and sanitation laws* shall be ensured by documented internal and external inspections, and by corrective action when indicated.

2.  Compliance with *all applicable fire safety codes and fire safety performance requirements* for facility furnishings shall be ensured.

3.  Compliance with *fire prevention regulations, inspection requirements and other practices*, including periodic fire drills, shall ensure the safety of detainees, staff and visitors.

**Exhibit C**, Section 1.2 of the 2011 Performance Based National Detention Standards (Revised December 2016), pg. 1.

Here, Defendant argues that state and local requirements are not enforceable against it because, as a federal contractor, Defendant is immune from such regulation. To date, no contract

has been provided to prove Defendant's claims. However, assuming Defendant's assertion is true, Defendant fails to acknowledge that the governing federal standards require Defendant to comply with applicable state and local requirements to ensure the safety of staff and detainees occupying the Delaney Hall Facility.

Further, ICE's intent for GEO to adhere to those state and local requirements was confirmed during the City's communication with John Tsoukaris, the Field Office Director for ICE, who stated that Defendant informed him that it had obtained all the necessary permits. Fairbairn Cert., **Ex. D** at ¶ 20. Defendant itself has asserted that ICE informed it that Defendant simply needed to schedule an appointment. Fairbairn Cert., **Ex. B** at ¶ 13. Thus, Defendant and ICE have the shared understanding that Defendant is not immune from complying with local building safety requirements. Although Defendant has conceded that the PBNDS apply under the circumstances giving rise to this action, Defendant has refused to adhere to those standards. Therefore, the City is likely to succeed in proving that Defendant is not exempt from complying with applicable state and local requirements.

**B. Defendant has failed to comply with local and State safety laws.**

The crux of the City's claim in the Verified Complaint is that Defendant continues to blatantly violate the law by failing to comply with local and State codes designed to preserve the safety of all individuals on their property. The exterior of the property that was observed has already been found to be hazardous, with exposed wires and improper plumbing in violation of safety codes. Wooden Declaration at ¶ 9. Moreover, the City has not been permitted to conduct all necessary inspections to protect against hazards and nuisances that pose a danger to occupants and the City's first responders.

According to Mr. Tsoukaris, Defendant disputes that it did not obtain permits. The City has submitted sworn testimony to the contrary. Despite being in possession of these affidaivits from the City's officials, Defendant has not produced the alleged permits or even argued in their Removal papers that they obtained the proper permits. To the contrary, Defendant's argue that they are immune. Moreover, the fact that defendants have been providing phone numbers and emails, albeit non-functional, to the City for the purpose of scheduling inspections belies the fact that the inspections have already been completed.

The City maintains that the inspections have not taken place nor have the permits been obtained. What is apparent is

that on March 31, 2025, GEO, not ICE, denied the City's request to access the Delaney Hall Facility to conduct critical inspections despite the City's efforts to ensure that the above-noted objectives were achieved in line with Congress' direction, as well as ICE's intent to satisfy those objectives. The sworn testimony of the City's officials reveals that Defendant has failed to comply with the Fire Code and other provisions designed to protect the public and Defendant is unlawfully occupying the building and engaging in construction. Therefore, while the City does not need to show that it is more likely than not that it will ultimately succeed in this case, a different outcome is hard to fathom.

<u>POINT II</u>
<u>THE CITY WILL BE IRREPARABLY HARMED IF EMERGENT RELIEF IS NOT GRANTED</u>

"Irreparable harm is injury of such an irreversible character that prospective judgment would be inadequate to make the movant whole." <u>Bystron v. Hoover</u>, 456 F. Supp. 3d 635, 642 (M.D. Pa. 2020). A city can demonstrate irreparable harm where the circumstances present a risk to the loss of human life during the pendency of the action. <u>City of Philadelphia v. Sessions</u>, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017). Since that

is precisely what is at issue here, this factor weighs heavily in favor of granting the City's emergent application.

Furthermore, the burden to demonstrate irreparable harm is lessened where matters of public interest are implicated. "'[P]arts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 803 (3d Cir. 1989) (quoting Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552 (1937)). Additionally, The application of a lessened irreparable harm standard is warranted where the public interest has been implicated by a statute. Id.

Here, the City is seeking to enforce at least three statutes with stated goals of serving the public interest. The City officials are seeking to inspect Defendant's property pursuant to their statutory authority "to insure adequate maintenance of buildings and structures throughout the State and to adequately protect the health, safety and welfare of the people;" "to determine if it meets the sanitary requirements;" to . . . protect the lives and property of the State's citizens. . . ." and ensure "fire safety inspections protect the public whenever buildings which pose a serious life safety hazard are found." N.J.S.A. 52:27D-120(e); N.J.S.A. 24:3-1; N.J.S.A.

14

52:27D-195.    Thus, the lessened irreparable harm standard applies and the City's proofs clearly vault that standard.

Even under a more stringent standard, the dangerous conditions created by Defendant's complete failure to abide by the City's regulations and to permit inspections to ensure compliance with regulations have created hazardous conditions for the citizens of Newark and the general public. Moreover, it poses an egregious and grave risk of serious bodily harm or death to anyone who occupies the building and the city's emergency responders.

Pleading on information and belief is acceptable where, as in this case, the facts are peculiarly within the defendant's knowledge. See Airsta Records v. Doe, 604 F.3d 110, 120 (2d Cir.2010); McDermott v. Clondalkin Grp., Inc., 649 Fed. Appx. 263, 268 (3d Cir. 2016). The condition inside the building remains exclusively within Defendant's knowledge since Defendant has unlawfully precluded the City from entering. However, the City has observed dangerous construction completed by Defendant on the exterior of the building without a permit, which gives reason to believe more dangers exist or are being created within the building.

Without the imposition of injunctive relief, Defendant has shown that it will continue to violate the law since its representatives were alerted to the need to inspect the property

15

and simply refused to allow access to the property. Even after being alerted to the City's desire to schedule an inspection of the property, Defendant has not provided the City access to conduct the necessary inspections.

Ultimately, as the above quoted statutes declare, the enforcement of the building and fire codes are critical to protect the lives and property of the occupants, neighbors, and emergency responders of the City. With each passing day, the risk to human life intended to be minimized by the City's statutory authority to inspect and enforce compliance with safety regulations is compounded due to Defendant's refusal to comply with local, State, and federal laws or policies. It goes without saying that the loss of life is not something that can be restored by a court at a later date. Consequently, temporary restraints and an injunction are appropriate to immediately initiate the process to abate the danger.

## POINT III
### THE BALANCING OF ANY HARM TO DEFENDANT AGAINST THE PUBLIC INTEREST FAVOR GRANTING THE CITY OF NEWARK'S APPLICATION

The last two factors involve a balancing of the equities. "Where the Government is a party, the last two factors in the preliminary injunction analysis merge." City of Philadelphia v. Sessions, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017) (citing Nken v. Holder, 556 U.S. 418, 435 (2009). Protecting public health

and the regulation of fire safety are matters of compelling and substantial public concern. See Doe 1 v. Perkiomen Valley Sch. Dist., 585 F. Supp. 3d 668, 704 (E.D. Pa. 2022); Glen Riddle Station, L.P. v. Middletown Twp., No. CV 21-286, 2021 WL 1141964, at *8 (E.D. Pa. Mar. 25, 2021) (citing Parow v. Kinnon, 300 F. Supp. 2d 256, 265 (D. Mass. 2004) ("One would be hard pressed to imagine a topic of greater public concern than fire safety")). Moreover, "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury," as is the case here, "it almost always will be the case that the public interest will favor the plaintiff." Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

Since the City has demonstrated a reasonable likelihood of success in Point I and irreparable injury in Point II above, this matter should result in the typical outcome of a finding that these last two factors favor the City. Additionally, since the City is a government entity, the demonstration of irreparable harm also establishes that the public interest weighs in favor of granting the City's motion. The property poses a threat to the public and grave risk of serious injuries or death. Thus, absent some abnormally substantial harm to Defendant, the instant Motion should be granted.

17

A review of the facts reveals that there are no reasonable and legitimate hardships that Defendant can claim should the Court grant the requested temporary and preliminary relief. The only "hardship" that Defendant could possibly identify is that it would not be able to proceed with its complete disregard of the City's regulations that have resulted in the emergent jeopardy to the safety of the public. See J.H. Renarde, Inc. v. Simms, 312 N.J. Super. 195, 2015 (N.J. Ch. 1998) (holding that "self-inflicted hardship should not be considered, or, at best, should be given very little weight in determining whether the injunction should issue.") (internal citations omitted). Thus, the potential harm to Defendant is delay, but the delay is by no means an undue hardship for Defendant since it is legally required to make time for this process to occur in accordance with State law and the Congressional directive.

Furthermore, the delay in ceasing work to allow for inspections is minimal and, more importantly, does not pose a risk of injury or death. Moreover, any abatement that would be required would be to protect the health and safety of the public. Accordingly, since the City presents compelling and substantial public concerns that outweigh the negligible harm to Defendant, the City's application for emergent relief should be granted.

## **CONCLUSION**

For the foregoing reasons, all four factors to be considered for the granting of injunctive relief and temporary restraints weigh in favor of the City of Newark and, therefore, the Court should grant Plaintiff's application for an order to show cause why preliminary injunction should not issue with temporary restraints.

Respectfully submitted,

**MICHAEL A. ARMSTRONG & ASSOCIATES, LLC**

Dated: April 11, 2025        By: *s/ Morrison Kent Fairbairn*
                                    Morrison Kent Fairbairn, Esquire
                                    Attorney for Plaintiff,
                                    City of Newark

19