# MICHAEL A. ARMSTRONG & ASSOCIATES, LLC

Counselors at Law
79 MAINBRIDGE LANE
WILLINGBORO, NEW JERSEY 08046

TELEPHONE: (609) 877-5511
FACSIMILE: (609) 877-7755

✦MEMBER NJ, NY & GA BARS
+MEMBER NJ & PA BARS

MICHAEL A. ARMSTRONG✦
Email: maa@armstronglawfirm.com

CRISTAL M. HOLMES-BOWIE
Email: chb@armstronglawfirm.com

BARBARA ANN JOHNSON-STOKES
Email: bjs@armstronglawfirm.com

MORRISON KENT FAIRBAIRN+
Email: mkf@armstronglawfirm.com

EVAN A. ARMSTRONG
Email: eaa@armstronglawfirm.com



April 21, 2025

**FILED VIA ECF**
Hon. Jamel K. Semper, U.S.D.J.
Frank R. Lautenberg U.S. Post Office & Courthouse
2 Federal Square
Newark, NJ 07102

> **RE:** **City of Newark v. Geo Group, LLC**
> **Docket No.: 2:25-cv-2225-JKS-LDW**

Dear Judge Semper:

    My office represents Plaintiff, the City of Newark ("The City"), in the above-referenced matter. I write to provide Your Honor with the City's response to the Motion to Join a Necessary Party and Dismiss and Opposition to the City's Order to Show Cause filed by Defendant, Geo Group, Inc. ("GEO") per Your Honor's text order issued on April 17, 2025. (ECF 24). Plaintiff relies on the facts contained within its brief in support of its Order to Show Cause, Complaint, and Declarations filed in support of the Complaint. (ECF 15).

## POINT I

### THE COURT SHOULD NOT FIND THAT ICE IS A NECESSARY PARTY TO THIS ACTION AND THE COMPLAINT SHOULD NOT BE DISMISSED.

    Fed. R. Civ. P. 19 states in relevant part that:

**(a) Persons Required to Be Joined if Feasible.**

    **(1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

    **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

> **(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:**
>
> **(i) as a practical matter impair or impede the person's ability to protect the interest; or**
>
> **(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.**

For the reasons specified below under Point II, the Court should find that ICE is not a necessary party and Plaintiff's Complaint should not be dismissed. ICE has contractually agreed to have GEO comply with State and local laws. (ECF 19). In fact, ICE has not prevented GEO from complying with the Contract and was under the impression that GEO had complied with local and State laws. (ECF 15-9). Moreover, the State and local laws, codes, and regulations state that the City must deal directly with the owner of the premises, GEO Group, under the facts of this case.

## POINT II

## GEO GROUP IS NOT IMMUNE FROM SUIT

**A.    Defendant is required to adhere to local and State safety laws.**

GEO Group highlights in its immunity argument that:

> **Federal statutory directives and a comprehensive set of federal detention standards known as the Performance Based National Detention Standards ("PBNDS")** _**govern the operation of private detention facilities**_**. The current PBNDS were implemented and** _**incorporated into ICE contracts at the direction of Congress**_**.**

(Pl. Notice of Removal ¶ 46) (Emphasis supplied). The PBNDS, which can be found on ICE's website, are "implemented and incorporated into ICE contracts *at the direction of Congress*" as GEO points out, and therefore, the standards cannot be waived. A review of the PBNDS, reveals that Contract Detention Facilities (CDFs) are expected to act in accordance with the following objectives that are relevant to this case:

> **1.    Compliance with** _**all applicable**_ **federal,** _**state and local safety and sanitation laws**_ **shall be ensured by documented internal and external inspections, and by corrective action when indicated.**
>
> **2.    Compliance with** _**all applicable fire safety codes**_ **and** _**fire safety performance requirements**_ **for facility furnishings shall be ensured.**

2

> **3.     Compliance with _fire prevention regulations, inspection requirements and other practices_, including periodic fire drills, shall ensure the safety of detainees, staff and visitors.**

**Exhibit C,** Section 1.2 of the 2011 Performance Based National Detention Standards (Revised December 2016, pg. 1).

More specifically, the language in the agreement between ICE and GEO Group supplied to the court is consistent with Congress' mandate. (ECF 19).  Among the repeated mandates to comply with local laws and standards, the contract specifically directs GEO Group to: (1) obtain all required permits and licenses from the City by the date of the contract award; (2) maintain local permits and business licenses; (3) comply with local laws regarding safety, health codes, regulations or government policy with the most stringent taking precedent; (4) upon expanding the facility, comply with local building codes in place at the time of original construction; (5) comply with local fire and safety program codes; and (6) adhere to local electrical codes. (ECF 19).

Here, Defendant argues that state and local requirements are not enforceable against it because, as a federal contractor, Defendant is immune from such regulation.  To the contrary, the PNBDS and contract disprove Defendant's all of the Defendant's claims that it and ICE are immune from complying with local laws.  Defendant fails to acknowledge the contract provisions, federal standards in the PBNDS, requiring Defendant to comply with applicable state and local requirements to ensure the safety of staff and detainees occupying the Delaney Hall Facility.

Further, ICE's intent for GEO to adhere to those state and local requirements was confirmed during the City's communication with John Tsoukaris, the Field Office Director for ICE, who stated that Defendant informed him that it had obtained all the necessary permits. (Fairbairn Cert., ECF 15-5 at ¶ 20).  The Defendant has asserted that ICE informed it that the Defendant simply needed to schedule an appointment. Fairbairn Cert., ECF 15-5 at ¶ 13). Thus, Defendant and ICE have the shared understanding that Defendant is not immune from complying with local building safety requirements consistent with Congress' directive in the PBNDS and the contract. Although Defendant has conceded that the PBNDS applies here, Defendant has refused to adhere to Congress' mandate and its contractual obligation. Clearly, Defendant is not immune from complying with applicable state and local requirements.

It is respectfully submitted that the Defendant is aware that it is not immune and must comply with local laws, codes, and regulations simply because counsel for GEO admitted on the record before the Court on April 17, 2025, that it has complied in the past.  The Defendant stated that it complied with the allowing elevator inspections by local officials and sought a permit and CO in the past to construct a detention center for ICE in the past.  Moreover, the fact that defendants have been providing phone numbers and emails, albeit non-functional, to the City to schedule inspections belies both the position that the inspections and permits have already been obtained and completed and the position that Defendant is somehow now immune after years of compliance.

The City maintains that the inspections have not taken place nor have the permits been obtained. What is apparent is that on March 31, 2025, GEO, not ICE, denied the City's request to access the Delaney Hall Facility to conduct critical inspections despite the City's efforts to ensure that the above-noted objectives were achieved in line with Congress' direction, as well as ICE's intent to satisfy those objectives. The sworn testimony of the City's officials reveals that Defendant has failed to comply with the Fire Code and other provisions designed to protect the public, and Defendant is unlawfully occupying the building and engaging in construction. Therefore, GEO Group is properly named as the Defendant in this case and is not immune from suit.

## POINT III

### THE CITY'S COMPLAINT SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 8(A)(2)

In response to the 12(e) argument in Plaintiff's Motion and Opposition to the City's Order to Show Cause, the City relies on the argument set forth in its letter filed on April, 21, 2025. (ECF 29).

### RESPONSE TO THE COURT'S TEXT ORDER DATED APRIL 17, 2025 (ECF DOCUMENT #24)

**(b)   A STATEMENT OF THE TIME IT WOULD TAKE TO CONDUCT EXPEDITED INSPECTION OF THE DELANEY HALL FACILITY IN ORDER TO ISSUE A CERTIFICATE OF OCCUPANCY.**

Upon being permitted to inspect the facility, the City will make an effort to expedite scheduling the initial inspection that the City attempted to conduct on March 31, 2025, on an emergency basis based on staff availability. An initial expedited inspection can be accomplished on two days' notice. Further action will be mandated upon visual inspection based on any findings. Additionally, reinspection and issuance of the Continued Certificate of Occupancy will depend on the GEO Group's response to any violations issued, if any. Therefore, the City is unable to provide a timeline for issuance of the CCO.

Fire Prevention Violations:

1. Provide entry: N.J.A.C. 5:70-2.1 (C)  (Fireman needs to test elevator recall)
2. Provide evacuation plan: N.J.A.C 5:70-3201.4
3. Elevator Test Report- N.J.A.C 5:70-917.1

These violations must be abated before issuing the Fire Certificate. The no-entry violation was issued because they did not allow the Engine Co. or the Fire Chief to enter the building to test the elevator recall. Items 2 and 3 above must be provided by the property owner. The City can have the Fire Department respond anytime, provided they allow entry. Once the City

4

Elevator Inspector inspects the elevators and it passes, the Fire Chief must be provided with a copy of the approved certificate in order to issue the Fire Certificate.

> Health Inspections:

N.J.A.C. 8:24 states that inspections of Retail Establishments are to be conducted by Newark Department of Health and Community Wellness Registered Environmental Health Inspectors, rated by the Inspector at the time of inspection as unsatisfactory, conditionally satisfactory, or satisfactory (Red, Yellow, or White) depending on the severity of violations found.  The City gives up to one to two weeks to correct violations.   They can operate with a conditional satisfactory certificate while they fix the violations.  Inspection lasts from one to two hours, depending on the size of the location.

> Code Inspections:

The purpose of the inspection is to ensure code compliance, life safety, and readiness for occupancy under the requirements of the New Jersey Uniform Construction Code (N.J.A.C. 5:23).

1. **Schedule Inspection (TIME FRAME - 1hr)**

   - Coordinate inspection date with:
     - Construction Official
     - Relevant Subcode Officials (Building, Electrical, Fire, Plumbing, Mechanical, Elevator)
   - Engage owner or owner agents (contractors, etc.) if applicable for coordination of special requirements.  (This may add time to the scheduling timeline)

**2. On-Site CCO Inspection (TIME FRAME - 5 hours minimum):**
   Subcode officials will inspect for life safety and code compliance:

   *CONCURRENT INSPECTIONS MEPF (3-5 hrs) :*

   - **Mechanical**: Functional HVAC, ventilation, combustion air
   - **Electrical**: Safe wiring, operational panels, exit signs, smoke/CO detection (Concurrent with Fire, Plumbing and Mechanical)
   - **Fire Protection**: Sprinklers (if applicable), fire alarms, extinguishers, egress markings
   - **Plumbing**: Operational fixtures, hot water, drainage, backflow protection
       *INSPECTION CONTINGENT ON MEPF inspections (2-3 hrs):*

   - **Building**: Structural soundness, safe egress, ADA accessibility
       *INDEPENDENT INSPECTION (2-3 hrs):*

   - **Elevator** (if present): Valid inspection certificate, emergency features
   - 

5

4. **Documentation of Violations (If Found):**

   Typical violations may include:

   - Unpermitted construction or use
   - Missing or inoperative life safety systems
   - Non-compliant accessibility features
   - Fire separation deficiencies
   - Unmaintained or hazardous equipment/systems

5. **Correction Process (TIME FRAME - contingent on offense):**

   - Issue a **Notice of Violation** or **Correction List** if deficiencies are identified.
   - Provide time for corrective actions and schedule follow-up inspections.

6. **Reinspection (if applicable TIME FRAME - 3 hours minimum**/sequence of inspection follows the order stated on the On-Site CCO Inspection timeframe above**):**

   - Subcode officials verify the correction of all deficiencies.
   - Additional documentation may be required if substantial changes were made.

7. **Final Sign-Off (TIME FRAME - contingent on meeting code requirements):**
   - Upon satisfactory inspection, all subcode officials provide final approvals.
   - Construction Official reviews and authorizes the Certificate of Continued Occupancy.

8. **Issuance of Certificate of Continued Occupancy (CCO) (TIME FRAME - contingent on the processes listed above):**

   - CCO is issued, authorizing the building for legal occupancy by the tenant.
   - Copy provided to owner and maintained on file.

**(c) IDENTIFICATION OF ANY OTHER MANDATORY INSPECTIONS OR PERMITS REQUIRED FOR OCCUPANCY OF DELANEY HALL TO OCCUR.**

For the reasons stated above, there is no way to determine what other mandatory steps or permits are required to issue a CCO at this time until the initial inspections take place.

Respectfully submitted,

*s/Morrison Kent Fairbairn*

Morrison Kent Fairbairn